**MEDICAL LICENSING BOARD OF INDIANA, Appellant,**

v.

**Dr. James S. ROBERTSON, M.D., Appellee.**

**No. 50A04–8904–CV–138.**

Court of Appeals of Indiana, Fourth District.

Dec. 5, 1990.

Rehearing Denied Feb. 18, 1991.

Robert F. Gonderman, Sr., Craig A. Rieff, Gonderman Law Offices, P.C., South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Michael A. Minglin, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

On October 22, 1987, the Attorney General filed a disciplinary complaint[1] against James S. Robertson, M.D. of Plymouth, Indiana, before the Medical Licensing Board of Indiana (Board) and obtained an order placing Robertson on probation for 5 years with conditions.[2]

On April 5, 1988, the Administrative Law Judge issued his Findings of Fact, Conclusions of Law and Recommended Order. The Board concluded that Robertson's addiction to, abuse of, or severe dependency upon alcohol endangered the public by impairing his ability to practice safely. The Board ordered that Dr. Robertson's license be placed on probation for five years and that, as one of several conditions of probation, Robertson enter into an aftercare contract with the Physician's Assistance Program of the Indiana State Medical Association. The trial court vacated the decision of the Board. The Board appealed, raising several issues. We reverse because the trial court erred by finding that the Board's decision was not supported by sub-

---

1. The complaint alleged violation of Ind.Code 25-22.5-6-2.1, now IC 25-1-9-4, which reads in pertinent part as follows:

   (2) A practitioner shall conduct the practitioner's practice in accordance with the standards established by the board regulating the profession in question and is subject to the exercise of the disciplinary sanctions under section 9 of this chapter if after a hearing the board finds:

   (4) a practitioner has continued to practice although the practitioner has become unfit to practice due to:

   \*     \*     \*

   (D) addiction to, abuse of, or severe dependency upon alcohol or other drugs that endanger the public by impairing a practitioner's ability to practice safely;

2. The trial court did not believe that there was substantial evidence to support the Board's decision. However, there was no claim made that the Board lacked authority to place Dr. Robertson on probation. Probation with conditions is among the sanctions the Board can impose. IC 25-1-9-9 allows the Board to, among other things:

   (5) Place a practitioner on probation status and require the practitioner:

   (A) Report regularly to the board upon the matters that are the basis of probation;

   (B) Limit practice to those areas prescribed by the board;

   (C) Continue or renew professional education under a preceptor approved by the board until a satisfactory degree of skill has been attained in those areas that are the basis of the probation; or

   (D) Perform or refrain from performing any acts, including community service without compensation, that the board considers appropriate to the public interest or to the rehabilitation or treatment of the practitioner.

stantial evidence and by substituting its own judgment for that of the Board.

## FACTS

The evidence indicates that Dr. Robertson did not drink while on call or at the office. However, Dr. Robertson acknowledged that he drank to excess. On two occasions Dr. Robertson went to the hospital to treat patients even though his breath smelled of alcohol and his speech was impaired. The second incident on March 3, 1986, involved Robertson's treatment of an elderly male patient who had left his nursing home with a temperature of less than 94 degrees. At the time Dr. Robertson examined the patient, the patient's temperature had risen to 95.8 degrees. Dr. Robertson ordered the patient's release at that point. A nurse, Lori Boggs, contacted the hospital administrator because she felt the patient was in danger. The administrator contacted the president of the medical staff who ordered that the patient remain in the hospital until his temperature reached 98 degrees.

Dr. James Daniel Kubley, Dr. Robertson's nephew by marriage and a member of the group of physicians with whom Robertson practiced, organized an intervention to address Robertson's excessive use of alcohol. Robertson and Kubley were having differences regarding family matters and office management. As a result of this intervention, Dr. Robertson went to Smyrna, Georgia and checked into the Ridgeview Institute. Robertson checked out of the Institute prior to the completion of the program (after 21 days), though his sponsor physician recommended that he stay. Robertson had not had a drink since July of 1987, but he acknowledged he had a problem.

The Board affirmed the Administrative Law Judge's Findings of Fact, Conclusions of Law and Recommended Order which read, in pertinent part, as follows:

## FINDINGS OF FACT

1. Respondent currently possesses a valid license to practice medicine in the State, that being license no. 01015271.

2. Notice of these proceedings were properly sent to and received by the Respondent pursuant to IC 4–21.5–1 *et seq.*

3. In or around 1985 Respondent sought the consultation of Dr. Jon Kubley for treatment of a hospitalized patient. Upon his arrival at the hospital to treat this patient, Respondent had a strong odor of alcohol on his breath and was speaking with slurred speech.

4. On or about March 3, 1986, Respondent appeared in the emergency room of Holy Cross Parkview to care for a patient. Respondent's face was flushed; he had a strong odor of alcohol on his breath and was speaking in a loud voice.

5. Respondent treated the elderly patient and ordered his release from the hospital despite the fact that the patient's body temperature was 95.8 degrees at the time of release. This order to release was subsequently overturned by the President of the medical staff who ordered that the patient remain in the Emergency Room until his temperature had elevated to 98 degrees.

6. The Respondent was the subject of an intervention to address his excessive use of alcohol in July of 1987. Following this intervention, which included family members and professional associates, Respondent went to Smyrna, Georgia and checked into the Ridgeview Institute. However, despite urgings by his sponsor physician to stay and complete the program, the Respondent left the recovery program at the expiration of twenty-one (21) days.

7. Although he has not consumed any alcohol since July of 1987, Respondent has acknowledged that he has a problem with alcohol and has drunk to excess.

## CONCLUSIONS OF LAW

1. The Board has jurisdiction to hear this case and to take disciplinary action against the Respondent.

2. The conduct of the Respondent constitutes violation of IC 25–22.5–6–2.-1(b)(4)(D) to wit:

(b) A practitioner shall conduct the practitioner's practice in accordance with the standards established by the board under IC 25–22.5–2–7 and is subject to the exercise of the disciplinary sanctions under subsection (e) if, after a hearing, the board finds:

(D) addiction to, abuse of, or severe dependency upon alcohol or other drugs which endangers the public by impairing a practitioner's ability to practice safely;

## RECOMMENDED ORDER

Based upon the foregoing Findings of Fact and Conclusions of Law, the Administrative Law Judge now recommends the following ORDER:

1. The license of the Respondent, John S. Robertson, M.D., license no. 01015271, is hereby placed on probation for a period of five (5) years.

2. The conditions of the probation shall be as follows:

A. Respondent shall appear before the Board, upon the Board's request or notice which is to be given to the Respondent at least thirty (30) days prior to the date Respondent is to appear.

B. Respondent shall notify the Board of any change in his practice location and/or hospital privileges.

C. Respondent shall contact the Representative to the Indiana State Medical Association District B, Physicians Assistance Program and enter into an aftercare contract with this organization and shall attend weekly meetings of Alcoholics Anonymous. Respondent shall cause quarterly reports regarding compliance with the aftercare contract and attendance at the AA meetings to be submitted to the Board on a quarterly basis.

3. Respondent shall pay the costs of this disciplinary proceeding in the amount of $500.00 by check or money order made payable to the Health Professions Bureau. These costs to be submitted within thirty (30) days from receipt of this Order.

4. Respondent acknowledges and understands that any violation of the terms and conditions set forth herein shall immediately subject Respondent to the summary suspension of his license without additional notice.

(R. 152–154).

The trial court vacated the order of the Board with the following Judgment:[3]

## OPINION

As the basis for its judgment vacating the order of the Medical Licensing Board, the court first observes that the proceeding before the Board is for the protection of the public and is not to punish for past misconduct and consistent therewith sanctions can be imposed upon the petitioner only if the petitioner was (1) addicted to, abused, or has a severe dependency upon alcohol (2) endangered the public by impairing his ability to practice safely.

In reviewing the findings of fact entered by the Board on April 26, 1988, the court takes no exception to finding 1, 2, 3, 4, 5, and 6 so far as it goes, although in view of the total evidence upon the circumstances of Dr. Robertson leaving the Ridgeview Institute, the court fails to perceive how that standing alone can lead to any conclusions other than the conclusion that Dr. Dan Kubley was immensely disappointed in his projects. With respect to finding number 7, the Court notes that the respondent did not acknowledge that he "has" a problem with alcohol, but affirmed throughout his testimony that he did not believe he had a problem with alcohol, although he did

---

**3.** The Board had also raised as an issue that the trial court did not make findings of fact. The issue regarding standard of review is dispositive so we will not decide whether this Judgment included findings. However, we will note that simply because there is not a separate section entitled findings of fact, it does not mean that there are not findings of fact. The test for adequacy of special findings is "whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment." *Willett v. Clark* (1989), Ind.App., 542 N.E.2d 1354, 1357.

admit that he was "drinking too much". (Tr. P 121, L 15)

With respect to finding number 5, relating to Dr. Robertson's discharge order, which was overruled by the president of the medical staff, there is no proof whatever that the difference of opinion between Dr. Robertson and the president of the medical staff was anything other than a professional and judgmental disagreement, and that the order of Dr. Robertson endangered the patient.

In fact, viewing all of the evidence as a whole, the Court is unable to find any evidence from which it could be reasonably concluded that Dr. Robertson, even if he did have a problem with alcohol had advanced to a point where he was endangering the public in impairing his ability to practice safely. The findings themselves do not address that point and the point is drawn only upon a conclusion which has no factual footing behind it, and for that reason alone, the decision of the Medical Licensing Board of Indiana must be reversed simply because the gap between the other findings and the conclusion that public safety was endangered is not there.

Viewing the evidence as a whole and drawing all reasonable inferences in favor of the witnesses who testified on behalf of the State of Indiana, the only evidence in this record is that, in 1985, Dr. Robertson was in the hospital with an odor of alcohol on his breath, speaking, perhaps with slurred speech, for consultation with respect to, and not treatment of a patient; and that on March 3, 1986, Dr. Robertson appeared in the hospital with a flushed face, a strong odor of alcohol on his breath, and speaking in a loud voice, and that he made a decision which a senior physician overturned. There is another item of evidence indicating that at some point or another there was a body odor of alcohol about Dr. Robertson. However, the evidence is not contested that Dr. Robertson had never been reported to the medical staff of the hospital as a physician with an alcohol induced impairment and by literally hundreds of patients who had never noticed the effect. The record is however, abundant with proof that his accuser, Dr. Dan Kubley, had some business management controversies with Dr. Robertson, and in fact, the so called "black out" episode is a characterization given by Dr. Kubley to an event in which Dr. Kubley and Dr. Robertson were at odds with one another over business management and had nothing to do with the treatment of patients.

The whole proof in the case, and basically not controverted even by the State in its prosecution evidence, is that Dr. Robertson has been a fine and effective physician who at some point began to drink too much because of personal problems effecting him and his family presumably. When confronted, Dr. Robertson quit drinking and had not had a drink for the eight or nine months preceding the date of hearing on March 24, 1988.

Since the nature of the proceedings is one to protect the public, and not to punish, the court finds it impossible to understand how, on the date of hearing on March 24, 1988, it could be concluded that Dr. Robertson endangered the public through an impaired ability to practice safely, when by the Board's own findings, he had not consumed alcohol for eight months preceding.

One would have thought that the Board's message to Dr. Robertson would have been congratulatory in character rather than restricting his license to a probationary status.

The Court is not unaware that once an alcoholic, and assuming that it would even be possible to conclude on this skimpy evidence that Dr. Robertson was an alcoholic, or was addicted to, abused, or had a severe dependency upon it, a monitoring process through the assistance of a physicians assistance program or peer review program would have been quite appropriate to see that he stayed on the wagon; but at this point, since Dr. Robertson evidenced every criteria of success in his rehabilitation, it seems inappropriate to place his medical license upon a probationary status, because he was not at that time endangering the

public as a result of an impaired ability to practice safely. Of course, if the doctor fails in his rehabilitation, then upon appropriate review, his license might then be placed on probation or, in fact, suspended, but the remedy of restricting the license to a probationary status is, in April, 1988, either too soon or too late.

As it now stands, if the doctor should simply miss one alcoholics anonymous meeting, his probationary license would be subject to absolute revocation, regardless of how justified the missing of that meeting might be. The Court assumes that the Medical Licensing Board would not act so hastily, but then, who knows.

For the reasons stated, the decision of the Medical Licensing Board of Indiana is now reversed.

(R. 92–96).

## DECISION

The Board argues that the trial court erred by substituting its own judgment for that of the Board and that there was substantial evidence to support the Board's decision. We agree with the Board.

As the Board correctly points out, it is axiomatic that, in reviewing an administrative agency's decision, the trial court may not reweigh the evidence submitted to the agency. *Eastbrook Community Schools Corp. v. Indiana Education Employment Relations Board* (1983), Ind.App., 446 N.E.2d 1007. Trial court review is not a trial de novo; rather, it is a review of evidence appearing in the agency's record which led to the agency's determination. *Martin County Nursing Center, Inc. v. Medco Center, Inc.* (1982), Ind.App., 441 N.E.2d 964. The trial court reviewing an agency's action cannot overturn such action merely because the reviewing court would have reached a different result on the evidence. *Department of Financial Institutions of Indiana v. Beneficial Finance Co. of Madison* (1981), Ind.App., 426 N.E.2d 711. "The board or agency, not the court, determines the issues of fact. The

court cannot weigh conflicting evidence, which appears in the record of the hearing, for the purpose of determining for whom it preponderates. If there is any substantial evidence to support the finding of the board or agency, the court may not disturb the board's or agency's determination." *Indiana Educational Employment Relations Board v. Baugo Community Schools* (1978), Ind.App., 377 N.E.2d 414, 416.

The Board's determination is supported by substantial evidence. The trial court states that finding number 7 is not supported by substantial evidence. The Board's finding number 7 reads:

"Although he has not consumed any alcohol since July of 1987, Respondent has acknowledged that he has a problem with alcohol and has drunk to excess."

(R. 153).

Dr. Robertson clearly stated that he had been drinking more than he should. The trial court argued that Robertson did not say that he "has" a problem. It is true that Dr. Robertson claimed that he has broken the habit, however, that does not mean that he denies that he still has a problem. Taking Dr. Robertson's testimony as a whole, the Board could conclude that Robertson acknowledged that he "has" a problem. (R. 285). Even if finding number 7 was not supported by substantial evidence, there is still substantial evidence to support the Board's determination.

There is ample evidence that Dr. Robertson had been drinking when he treated two patients at the hospital. The Board's conclusion that Dr. Robertson's abuse of alcohol endangered the public was supported by the fact that he continued to see patients after he drank enough to impair his speech, even if he did not treat the patient incorrectly.[4]

The fact that Robertson saw patients when impaired by alcohol means that he *continued* to practice after he became unfit due to abuse of alcohol and that in doing so he endangered the public. Though we

---

**4.** This is not to say that a doctor who has a social drink and then sees patients has automatically endangered them. However, a medical review board could conclude that a doctor who continued to practice after he drank enough to impair his speech is endangering the public.

could not find any Indiana cases which directly address this situation, we find the reasoning of a New York court persuasive on this point. *O'Brien v. Commissioner of Educ. of NY*, (1988), 136 A.D.2d 837, 523 N.Y.S.2d 680.

In *O'Brien* the court found that there was substantial evidence to support a board's decision to revoke a doctor's license for professional misconduct in a situation in which the doctor appeared at the hospital, treated patients with alcohol on his breath on numerous occasions, and consumed alcohol nightly. However he was never accused of incorrectly treating a patient as a result of his drinking. In the case at bar, Robertson was not actually on call but he did see two patients when he had been drinking. Furthermore, unlike *O'Brien*, in the instant case the Board could conclude that releasing an elderly hypothermic patient from the hospital when his temperature was still under 96 degrees *actually* endangered that patient.[5] There was substantial evidence to support the Board's conclusion that Robertson continued to practice after he became unfit due to abuse of alcohol.

In concluding that Dr. Robertson did not endanger the public, the trial court improperly substituted its own judgment for that of the Board. As noted earlier, a trial court cannot overturn an agency decision merely because it would have reached a different result on the evidence. *Beneficial Finance Co., supra.*

The trial court argues that the purpose of the hearing was to protect the public, not to punish for past misdeeds and that putting Dr. Robertson on probation is merely punishing for past misdeeds. The trial court also states that Dr. Robertson is to be congratulated for abstaining from alcohol for eight months.

We agree that if Robertson has actually abstained for eight months he is to be congratulated. However, the probation serves as a safeguard for the public. The

doctor performing the psychiatric evaluation of Dr. Robertson stated that Robertson had abused alcohol in the past and had some "addictive personality traits." (R. 126). The Board could reasonably conclude that Dr. Robertson still has a potential to drink and treat patients. It is reasonable, for the protection of the public, that the Board should be able to revoke his license immediately if there is an indication of reoccurring abuse of alcohol.

For the foregoing reasons, we reverse.

CHEZEM and SHIELDS, JJ., concur.

---

5. Dr. Robertson contends that this merely illustrates a difference in professional judgment. A medical board would be in a position to determine if this was more than a difference in judgment. Furthermore, even if this was merely a judgment call, a patient is entitled to a physician whose judgment is not impaired by alcohol.