# FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ERIC C. BOHNET**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

VIRGINIA DAVIS,                          )
                                         )
        Appellant,                       )
                                         )
    vs.                                  )        No. 49A05-1304-PL-187
                                         )
INDIANA STATE BOARD OF NURSING,          )
                                         )
        Appellee.                        )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia J. Ayers, Judge
Cause No. 49D04-1201-PL-2479

**December 27, 2013**

**MEMORANDUM DECISION – FOR PUBLICATION**

**MATHIAS, Judge**

Virginia Davis ("Davis") appeals the decision of the Indiana State Board of Nursing ("the Board") which revoked her license after determining that Davis was unfit to practice nursing due to her substance abuse disorder and refusal to participate in a recover monitoring agreement ("RMA"). On appeal, Davis raises several issues, which we consolidate and restate as:

I. Whether the Board's decision was arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with the law; and

II. Whether the trial court erred when it cited in its order an administrative code section that did not serve as a basis for the complaint against Davis.

We affirm.

**Facts and Procedural History**

Davis, a Licensed Practical Nurse, received her Indiana nursing license on June 2, 1989. From September 9, 1988 to October 7, 1988, several months prior to being issued her license, Davis was admitted for inpatient treatment to Fairbanks, an Indianapolis facility that provides addiction treatment and recovery services. She was again admitted to Fairbanks for inpatient treatment immediately after receiving her license, from July 6, 1989 to July 10, 1989. During both treatment periods, Davis was diagnosed with an alcohol abuse disorder. Following her treatment at Fairbanks, Davis practiced as a nurse in Indiana for nearly twenty-two years without any disciplinary incidents.

On March 24, 2010, after an intentional overdose of Xanax pills, Davis was voluntarily admitted to the Community North Psychiatric Pavilion. There, Dr. Timothy Kelly, an addiction specialist, diagnosed Davis with major depressive disorder and alcohol, benzodiazepine, and cannabis dependence. Dr. Kelly reported that at the time of

2

her admission to Community North, Davis was consuming up to a twelve-pack of beer and two bottles of champagne per day and was using Xanax recreationally.[1] Davis was also smoking marijuana daily.

Five days after Davis's admission to Community North, on March 29, 2010, Dr. Kelly reported Davis's admission and diagnoses to the Indiana State Nurses Assistance Program ("ISNAP"). Upon Davis's discharge, Dr. Kelly authorized her to work and the following month, David began working at Sander's Glen, a retirement community in Westfield, Indiana.

When ISNAP receives reports regarding practicing nurses who are shown to be dependent on narcotics, alcohol, or marijuana, its standard protocol is to recommend a three-year recovery monitoring agreement. Therefore, after Dr. Kelly reported to ISNAP his diagnosis of Davis's dependencies and disorders, ISNAP recommended a three-year RMA for Davis and mailed it to her on June 30, 2010. The terms of the RMA required Davis, among other things, to submit to twice-monthly drug screenings, attend three Alcoholics Anonymous meetings per week, submit monthly reports to ISNAP, meet with an addictionologist, and notify ISNAP if she wished to vacation out of state or have dental work performed. The agreement was due back to ISNAP on July 14, 2010.

On July 14, 2010, Davis informed ISNAP by letter that she refused to enter into a three-year RMA. A week later, on July 21, 2010, ISNAP filed a Consumer Complaint Form with the Attorney General, informing the Attorney General that Davis had refused to enter into an RMA and that ISNAP was closing Davis's file. The complaint

---

[1] Davis had been diagnosed with breast cancer four years prior and was prescribed Xanax at that time.

acknowledged that Davis's current employer, Sander's Glen, had informed ISNAP that they had no concerns that Davis was impaired and that no job performance issues had arisen. Davis's supervisors at Sander's Glen had also informed ISNAP that they had been conducting random urine drug screens on Davis and that the results of the screens had all been negative. Davis left her job at Sander's Glen in March of 2011, and thereafter began working at Sheridan Rehab, an extended care facility.

On May 31, 2011, the Attorney General filed a complaint with the Indiana State Board of Nursing, alleging

> a violation of Ind. Code § 25-1-9-4(a)(4)(D) in that [Davis] has continued to practice although she has become unfit to practice due to addiction to, abuse of, or severe dependency upon alcohol and other drugs that endanger the public by impairing the practitioner's ability to practice safely as evidenced by Respondent being diagnosed with an alcohol, cannabis, and benzodiazepine dependence, as well as Respondent's hospitalization for an intentional Xanax overdose.

Appellant's App. pp. 49-51.

In August of 2011, ISNAP instructed Davis to obtain a current assessment at Gallahue, a mental health service center. There, Davis reported that over the prior two to three months, she had been drinking 1.75 liters of rum every two weeks and smoking two grams of marijuana per week. The addictions specialist at Gallahue diagnosed Davis with alcohol dependence in early partial remission, cannabis dependence in sustained full remission, and a major depressive disorder.

Davis began re-enrollment with ISNAP on September 2, 2011. On September 7, 2011, ISNAP mailed Davis a three-year RMA, consent agreements, and other forms. Davis again refused to sign the RMA.

4

On October 11, 2011, Davis met with Jack Stem, a Chemical Dependence Counselor Assistant employed by Peer Advocacy for Impaired Nurses, LLC. Stem reviewed Davis's August 2011 assessment from Gallahue and noted the following:

> [Davis] continues to believe she is a "social drinker" and "recreational user" of marijuana. While there are no diagnostic tests to prove an individual is chemically dependent, the lack of insight into the connection between her use of mood altering chemicals and the difficulties she has experienced throughout her life will make it difficult for her to remain clean and sober for prolonged periods of time. If a long term monitoring agreement is required by ISNAP the risk of relapse and failure to complete the monitoring program is significantly increased.

> While her motivation to remain abstinent is high at the present time, sustained abstinence is difficult when acceptance of the diagnosis of the disease of chemical dependence is lacking.

Appellant's App. p. 129.

On October 13, 2011, Davis appealed the length of the three-year RMA she received from ISNAP. Four days later, on October 17, 2011, ISNAP denied Davis's appeal, determining that the length of the RMA was appropriate.

On October 25, 2011, Davis appealed the length of the RMA to Ernest Klein, ISNAP's executive director, requesting a one-year RMA and noting that "the evidence provided to ISNAP indicates Ms. Davis has practiced nursing safely despite the personal issues which lead [sic] to the suicide ideations in March 2010." Appellant's App. p. 61. Three days later, on October 28, 2011, Mr. Klein denied Davis's appeal, observing:

> 1. That [Davis was] first treated for alcohol use in 1988.
> 2. The first contact with ISNAP was in April 2011.
> 3. ISNAP closed [Davis's] file in July 2011 as [Davis] did not follow through with signing a Recovery Monitoring Agreement (RMA).
> 4. In August of 2011 [Davis] contacted ISNAP again and were directed to get an addictions assessment.

5

5. That assessment was completed on August 31, 2011 with a diagnosis of Alcohol Dependence, in Early Partial Remission.

6. A second assessment on October 22, 2011 also indicated Alcohol Dependence and that [Davis has] "not accepted diagnosis of alcohol dependence."

Appellant's App. p. 63.

Three days later, on November 1, 2011, Davis notified ISNAP that she would not enter into a three-year RMA, and ISNAP closed her file. Also on November 1, Davis was assessed by a third addictions specialist with cannabis dependence, alcohol dependence, major depressive disorder, and sedative abuse.

On November 11, 2011, Davis filed a motion for summary judgment with the Board, challenging the Attorney General's May 31, 2011 complaint and including as exhibits several letters of support from former and current co-workers and supervisors. In her motion, Davis argued that

[she] is not an imminent risk to public safety nor is she unsafe to practice nursing based on her medical diagnoses. A medical diagnosis in and of itself does not equate to an inability to practice nursing safely without corroborating evidence. Respondent's Exhibits demonstrate her ability to practice safely despite her medical diagnoses as well as workplace. Professional, and personal awareness and accountability for Ms. Davis and her employer, Sheridan Rehabilitation. Because no genuine issue of fact exiss [sic] to support the sufficiency of the State's allegation that Davis is unfit to practice nursing pursuant to Ind. Code § 25-1-9-4(a)(4)(D), Respondent requests the Board grant her Motion for Summary Judgment and dismiss the May 31, 2011 Complaint against her license.

Appellant's App. p. 65. The Board denied Davis's motion.

The Board conducted a hearing on November 17, 2011. The Board admitted numerous exhibits submitted by Davis, including the letters of support written by former supervisors, co-workers, and medical providers; negative drug test results from tests

6

taken from April 2010 to November 2011; and job performance evaluations from 2007 and 2009. ISNAP's program director testified that he believed that Davis minimized her substance abuse problems. Davis testified that she did not believe that she suffered from a substance abuse order and stated that she would refuse to enter into a three-year RMA if ordered to do so by the Board.

About one month later, on December 19, 2911, the Board entered its findings of fact and order, concluding that

> Respondent's refusal to participate in ISNAP, the Board's monitoring program, combined with her lack of knowledge and understanding of substance abuse makes it highly unlikely Respondent will ever be able to practice nursing safely. The Board hereby REVOKES Respondent's Indiana nursing license.

Appellant's App. p. 15.

On January 20, 2012, Davis filed a petition for judicial review of the Board's order in the Marion Superior Court. The parties submitted briefs and oral argument was held before the trial court on February 6, 2013. On March 21, 2013, the trial court entered findings of fact and conclusions of law denying Davis's petition for judicial review and affirming the decision of the Board.

Davis now appeals.

## Discussion and Decision

When we review the decision of an administrative agency, we apply the same standard as the trial court. Dep't of Envtl. Mgmt. v. Lake County Solid Waste Mgmt. Dist., 847 N.E.2d 974, 983 (Ind. Ct. App. 2006), trans. denied. We do not try the case de novo, reweigh evidentiary findings, or substitute our judgment for that of the

7

administrative agency.  St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville–Vanderburgh County, 873 N.E.2d 598, 600 (Ind. 2007).  Instead, we give "'deference to the interpretation of a statute by the administrative agency charged with its enforcement in light of its expertise in its given area.'"  Madison State Hosp. v. Ferguson, 874 N.E.2d 615, 619 (Ind. Ct. App. 2007), trans. denied (quoting State Employees' Appeals Comm'n v. Barclay, 695 N.E.2d 957, 959-60 (Ind. Ct. App. 1998), trans. denied).

The scope of judicial review of an agency action is very limited.  When reviewing an administrative agency's action, a court shall grant relief only if the person seeking such relief has been prejudiced by an agency action that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(2) contrary to constitutional right, power, privilege, or immunity;
(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(4) without observance of procedure required by law; or
(5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d).

An arbitrary and capricious decision is one which is patently unreasonable.  City of Indianapolis v. Woods, 703 N.E.2d 1087, 1091 (Ind. Ct. App. 1998).  It is made without consideration of the facts, in total disregard of the circumstances, and without any basis which might lead a reasonable person to the same conclusion.  Id.  The challenging party has the burden of proving that an administrative action was arbitrary and capricious.  Id.

"Substantial evidence" is relevant evidence a reasonable mind might accept as adequate to support the conclusion.  Roberts v. Cnty. of Allen, 773 N.E.2d 850, 853 (Ind.

8

Ct. App. 2002), trans. denied. When reviewing an administrative decision, we must determine "whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the [agency's] findings and conclusions." Zeller Elevator Co. v. Slygh, 796 N.E.2d 1198, 1206 (Ind. Ct. App. 2003). We do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence most favorable to the agency's findings. Id. However, if the question before us is primarily a legal question, "we do not grant the same degree of deference to the [agency's] decision, for law is the province of the judiciary and our constitutional system empowers the courts to draw legal conclusions." Id.

Indiana Code section 25-1-9-4(a)(4)(D) authorizes professional discipline where a medical practitioner "has continued to practice although the practitioner has become unfit to practice due to . . . addiction to, abuse of, or severe dependency upon alcohol or other drugs that endanger the public by impairing a practitioner's ability to practice safely."

Davis argues that the Board's revocation of her nursing license must be vacated because "the Board has no statutory authority to revoke a license for substance abuse or addiction under I.C. 25-1-9-4(a)(4)(D) unless there is a showing that the licensee attempted to practice her profession while her use of such substances rendered her unfit to do so." Appellant's Br. at 6-7. Specifically, Davis argues that the revocation of her license was improper because "[w]hile the Board submitted evidence sufficient to show that Ms. Davis had suffered from alcoholism and other substance addictions, there was no evidence to indicate that any of these addictions had ever affected Ms. Davis' work as a nurse." Appellant's Br. at 11. She argues that Indiana case law indicates that a medical

9

practitioner should only be disciplined for addiction if he or she practices while impaired. She cites three Indiana cases that she believes stands for this principle: Medical Licensing Board of Indiana v. Robertson, 563 N.E.2d 168, 173 (Ind. Ct. App. 1990); Regester v. Indiana State Board of Nursing, 703 N.E.2d 147, 151 (Ind. 1998); and Board of Medical Registration and Examination of Indiana v. Armington, 178 N.E.2d 741, 743 (Ind. 1961).

We disagree with Davis that the cited cases support her position. In Regester, the Board suspended indefinitely a registered nurse's license after she began writing prescriptions for herself and for family members and admitted that she was addicted to a painkiller. See Regester, 703 N.E.2d at 148. The opinion does not indicate whether Regester's addiction affected her treatment of patients. Our supreme court upheld the Board's suspension of Regester's license, finding that it was supported by substantial evidence. Id. at 151.

In Robertson, the Medical Licensing Board revoked a physician's license after it found that he had been drinking when he treated two patients, even though he did not treat the patients incorrectly. See Robertson, 563 N.E.2d at 173. This court upheld the revocation, but nowhere did we specifically indicate that revocation of a license is only proper where the professional's treatment of patients occurred while the professional was impaired.

In Armington, our supreme court concluded that the Board of Medical Registration and Examination's revocation of a physician's license was supported by substantial evidence, where the Board found that the physician was "unfit for the practice of medicine" because he had a narcotic addiction and wrote prescriptions for his patients

10

which he ultimately used for himself. See Armington, 78 N.E.2d at 743-44. Again, the opinion is devoid of any indication that revocation would be inappropriate unless the agency finds that the professional treated patients while impaired.

Here, Davis received three separate assessments in less than two years, all of which diagnosed her with alcohol and cannabis dependence and narcotic abuse. Her October 2011 assessment found that Davis believed that she was only a social drinker and recreational user of marijuana. At the Board hearing, Davis testified that she did not believe that she suffered from a substance abuse disorder. She repeatedly refused to enter into a three-year RMA. Under these facts and circumstances, and under our highly deferential standard of review of agency decisions, we conclude that the Board's findings support its determination that Davis was not able to practice nursing safely.

Davis also argues that the Board's revocation of her nursing license was excessive since she was "facing professional discipline for the first time, and the allegations against her involved neither workplace misconduct nor misuse of her nursing license." Appellant's Br. at 17-18. However, she cites no relevant legal authority to support her argument. Therefore, pursuant to Indiana Appellate Rule 46(A)(8), Davis waives this argument on appeal. See Hollowell v. State, 707 N.E.2d 1014, 1025 (Ind. Ct. App. 1999) (providing that failure to support each contention with citation to relevant legal authority results in waiver of that issue on appeal). Waiver notwithstanding, Davis's argument still fails. Indiana Code section 25-1-9-9 provides

> The board may impose *any* of the following sanctions, singly or in combination, if it finds that a practitioner is subject to disciplinary sanctions under section 4, 5, 6, 6.7, or 6.9 of this chapter or IC 25-1-5-4:

11

(1) Permanently revoke a practitioner's license.
(2) Suspend a practitioner's license.
(3) Censure a practitioner.
(4) Issue a letter of reprimand.
(5) Place a practitioner on probation status . . .
(6) Assess a fine against the practitioner in an amount not to exceed one thousand dollars . . .

(emphasis added).

It is clear, then, that the Board has broad discretion in imposing sanctions, including revocation of a professional's license, on a medical practitioner that it finds to be subject to disciplinary sanctions. Therefore, we conclude that the Board did not abuse its discretion or act in excess of its statutory authority in revoking Davis's license.

Davis further argues that, in upholding the Board's revocation of her license, the trial court improperly cited 848 Indiana Administrative Code 7-1-7 as a basis for Davis's discipline. This rule provides that a nurse who fails to sign an RMA will be subject to discipline under Indiana Code section 25-1-9. The code, however, was neither cited by the Board in its discipline of Davis nor raised by the complaint filed against Davis.

In reviewing the decision of an administrative agency, we are limited to determining whether the *agency's* decision is supported by substantial evidence and whether the *agency's* action is arbitrary and capricious, an abuse of discretion, or in excess of statutory authority. Med. Licensing Bd. of Indiana v. Kaminsky, 509 N.E.2d 893, 894 (Ind. Ct. App. 1987). We apply the same standard of review as the trial court, giving deference to the expertise of the agency. See Filter Specialists, Inc. v. Brooks, 906 N.E.2d 835, 848 (Ind. 2009). Thus, it is the agency's decision that we review, not the trial court's. Because we agree that there was substantial evidence to support the Board's

12

conclusion that Davis was not able to practice nursing safely, we conclude the trial court correctly affirmed the Board's decision.

Finally, Davis argues that the Board should have granted her motion for summary judgment before its hearing. She asserts that the affidavits and letters of support that she submitted proved that she was "fit to practice nursing and had not practiced while unfit[.]" Appellant's Br. at 18. This claim is merely a request that we reweigh the evidence, which we will not do. See KBI, Inc. v. Review Bd. of Indiana Dep't of Workforce Dev., 656 N.E.2d 842, 847 (Ind. Ct. App. 1995).

**Conclusion**

For all of these reasons, and under the facts and circumstances before us, we conclude that the Board's decision was supported by substantial evidence, was not arbitrary, capricious, or an abuse of discretion and was not in excess of the Board's statutory authority.

Affirmed.

BRADFORD, J., and PYLE, J., concur.

13