# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KYLE HUNTER**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DAVID F. MCNAMAR**
McNamar & Associates, P.C.
Indianapolis, Indiana

FILED

Mar 18 2014, 9:42 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

BEHAVIORAL HEALTH AND HUMAN            )
SERVICES LICENSING BOARD, KIMBLE L.    )
RICHARDSON, GEORGE BRENNER,            )
ANDREW HARNER, GENEVA OSAWE,           )
REX STOCKTON, CARLA GAFF-CLARK, and    )
THE STATE OF INDIANA,                  )
                                       )
    Appellants-Respondents,            )
                                       )
        vs.                        )    No. 48A05-1304-PL-185
                                       )
ELAINE WILLIAMS,                       )
                                       )
    Appellee-Petitioner.               )

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Dennis D. Carroll, Judge
Cause No. 48C06-1203-PL-36

**March 18, 2014**

**OPINION - FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

The Behavioral Health and Human Services Licensing Board ("Board") revoked a mental health counselor's license when she developed a personal attachment to a patient, continued to see the patient after their professional relationship had ended, and ignored the patient's requests to leave her alone. Upon judicial review, the trial court found substantial evidence supporting the Board's findings and affirmed the revocation. On the licensee's motion to correct error, however, the court changed course. This time, it faulted the manner in which the Board conducted its proceedings, disapproved of the lack of a standard for disciplining licensees, and thus reversed and remanded with instructions to either impose a lesser sanction or hold a new hearing.

We conclude the Board afforded the licensee fair proceedings and acted within its authority in imposing the sanction of revocation. Further concluding the trial court impermissibly reweighed the credibility of the witnesses and substituted its judgment for that of the Board, we affirm the revocation.

## FACTS AND PROCEDURAL HISTORY[1]

Elaine Williams was licensed in Indiana as a mental health counselor in 1999. In 2009, her former employer filed a consumer complaint with the Office of the Attorney General ("OAG") regarding Williams's relationship with Patient A, and in 2011, the OAG filed a petition for emergency suspension. The Board held a hearing on the petition, and even though it lacked a quorum, it suspended Williams's license for ninety

---

[1] Williams has filed a Request for Oral Argument. We deny this motion by separate order issued contemporaneously with this opinion.

2

days. The Board later rescinded the suspension order due to the lack of a quorum, and the OAG filed its administrative complaint against Williams.

At a January 2012 hearing before the Board, the State presented testimony from an OAG investigator and Patient A. After the State's case-in-chief, Board member Rex Stockton, a non-lawyer, indicated he was ready to vote. When he was reminded that the Board still had to hear Williams's case, he readily agreed to do so. Stockton also objected to "publishing" Patient A's deposition because he wanted to protect Patient A's confidentiality, but he again readily agreed to do so when he was told that "publishing" only meant entering the deposition into evidence. Finally, Stockton initially did not want to consider an article introduced by Williams because it was not peer-reviewed. Still, upon its admission, Stockton read the article. Based on evidence of Williams's improper conduct toward Patient A, the Board ultimately determined she had violated several statutes and regulations governing mental health counseling and revoked her license.

In March 2012, Williams filed a petition for judicial review in the Madison Circuit Court. She later filed a summary judgment motion, and the trial court held a hearing. In December 2012, the court issued an order stating its "disappointment" with the testimony of the OAG's investigator, whose unpreparedness for the administrative hearing led the court to question the quality of the investigation. Appellants' App. pp. 104-05. The court further stated that the credibility of Patient A, who it noted was mentally ill, "would have been highly suspect in a court of law." *Id.* at 105.

The court nonetheless concluded that "the Board's Findings of Fact are supported by substantial evidence, and it is for the Board and not the Court to weigh and evaluate

3

that evidence." *Id.* Specifically, the court noted facts drawn from the evidence showing

that Williams's relationship with Patient A became personal and that she ignored Patient

A's requests to leave her alone:

a.  Petitioner first began treating Patient A in 2005 while she was employed at Crestview Center in Anderson, Indiana. (Jan. 2012 Hearing, Testimony of Petitioner, page 143, lines 3-12).

b.  Patient A suffered from dissociative identity disorder, post traumatic stress disorder, and major depression. (Jan. 2012 Hearing, Testimony of Petitioner, page 146, lines 14-18; Petitioner's Exhibit 1, letter from Attorney Barkley Wong, p. 2)

c.  There is evidence that Patient A's multiple personalities integrated long before she gave testimony in this case. (*see* State's Exhibit B - email from Petitioner referencing Patient A's integration in Feb. 2010).

d.  Patient A testified that over the next five years, Petitioner followed Patient A as a client as Petitioner operated her own small practice, worked for Trinity Counseling, and worked for Meridian Services (Jan. 2012 Hearing, Testimony of Patient A, page 28, lines 22-23), that Patient A remained Petitioner's client throughout her job changes (*id.* at page 48, lines 20-24), and "[Petitioner] was always my therapist") *id.*

e.  Petitioner continued to act as Patient A's therapist until Patient A terminated the relationship in March of 2010. (Jan. 2012 Hearing, pages 28, 38-39, 48); *see also* State's Exhibit D (Petitioner references her "therapeutic relationship" with Patient A in March of 2010).

f.  Petitioner testified that she "worked at the various places and continued seeing Pt. A as a friend" (Testimony of Petitioner, pages 149-153).

g.  Petitioner testified that while acting as Patient A's counselor, Petitioner also acted as Patient A's advocate and friend and described her friendship and advocacy for A (Jan. 2012 Hearing, Testimony of Petitioner, 149-151, 215-220). *see also* State's Exhibit D (Petitioner discusses her "therapeutic relationship" with Patient A in March of 2010); Jan. 2012 Hearing Transcript, page 157 ("I would advocate for her"); and State's Exhibit F ("somewhere along the way I became [Patient A's] friend").

h.  Petitioner visited Patient A's home several times a week, including weekends to check on her, called her several times a week, and on at least one occasion, entered Patient A's home through an unlocked back door to return something to her. (State's Exhibit A, p. 2, letter attached to complaint from Petitioner's supervisor at Meridian to the Attorney General's Office)

i.  In July 2009, Patient A was hospitalized at Ball Hospital and Petitioner presented Patient A's history to the treatment team who expressed concern

4

about Petitioner's extensive involvement and knowledge in Patient A's treatment to Petitioner's supervisor at Meridian Services. (*Id.*)

j. On July 20, 2009, Petitioner's supervisor at Meridian Services told Petitioner that she believed [Petitioner's] boundaries with Patient A were becoming blurred and that she felt [Petitioner] was functioning as Patient A's friend rather than a therapist. (*Id.*)

k. When Petitioner's supervisor at Meridian Services told Petitioner that she was recommending that Patient A's treatment be transferred to another therapist within Meridian Services or another treatment facility in Anderson, Petitioner began crying and asked for a "middle ground" where she could still treat Patient A. (*Id.*)

l. On July 20, 2009, Petitioner resigned from Meridian Services after [her] supervisor prohibited her from continuing to see Patient A. Prior to leaving, [Petitioner] informed Patient A that she would be transferred to another therapist, but after her resignation, Petitioner continued seeing Patient A. (*Id.*)

m. In February of 2010, Patient A experienced an "integration" of her multiple personalities, and told Petitioner that she wanted a break from their therapeutic relationship and wanted some time away from Petitioner. (Jan. 2012 Hearing, Testimony of Patient A, pages 33-34 and 38-39). *See* also State's Exhibit C (email from Patient A to Petitioner asking Petitioner to leave her alone).

n. However, Petitioner refused to respect Patient A's clear requests to be left alone. Instead, Petitioner continued to attempt to contact Patient A by phone, in person, and by email and letters. (Jan. 2012 Hearing, Testimony of A, p. 35-36; *See* State's Exhibits C-N (various emails from Petitioner sent to Patient A).

o. The emails and letters contained in State's Exhibits A–N reveal the inappropriate depth of the involvement of Petitioner in Patient A's personal life.

p. March 10, 2010 email from Patient A to Petitioner: "Why I have turned on you? I have 18 messages on my machine that are clear boundary violations and have nothing to do with any kind of process… You were thoroughly unprofessional in your reaction to my making a decision without you. I know you will not accept the words I speak… I am only responding because I want you to leave what few people I have left in my life alone… No more phone calls, please." (State's Exhibit C).

q. March 11, 2010 email from Petitioner to Patient A: "You wanted to think of me as therapist and friend. You acknowledged then that my feelings about you were real, but that I am human and have feelings of my own too." "It was your heart that attracted me—your gentleness, wisdom, humor, etc." "I didn't know what your needs were right after you integrated…but when your anger started at me, I focused on my needs. At

5

that time my needs were to understand what had made you so angry, and I was feeling the hurt of loss—not loss of the alters, but of you…Because selfishly or not, I legitimately like, respect, admire, and enjoy you. I didn't want to lose you—a person I had grown to love." (State's Exhibit D).

r. March 14, 2010 email from Petitioner to Patient A: "Maybe I don't even know what all my hurt and grief is about—but I know I probably loved you better than anyone I ever have outside my immediate family… Although I cannot know what the future holds, I cannot see myself being your therapist again even if you wanted that—because somewhere along the way I bec[a]me your friend and that is why I have the right to grieve the loss." (State's Exhibit E).

s. Patient A's relationship with Petitioner was "not helpful" and was "traumatic" for her. (Jan. 2012 Hearing, page 63).

t. Petitioner's conduct harmed Patient A. Petitioner's unwanted attempts to contact Patient A became so extreme that Patient A had to contact the police twice regarding [Petitioner's] behavior (Jan. 2012 Hearing, Testimony of Patient A, pages 36-38).

u. Patient A has since moved away, changed her phone number, changed her email account, all in an attempt to distance herself from Petitioner (Jan. 2012 Hearing, Testimony of Patient A, p. 35, line 8-12 - email address changed); *See also* the testimony of Patient A's daughter that Patient A moved and changed her phone number because of Petitioner's unwanted involvement (July 2011 Hearing, page 23, lines 8-11).

v. This unwanted communication caused Patient A to feel afraid of Petitioner. (Jan. 2012 Hearing page 32, line 81).

*Id.* at 105-09. Based on this evidence, the trial court determined the Board properly found that Williams had violated: (1) Indiana Code section 25-1-9-4(a)(4)(B) (2007) (continuing to practice although unfit to practice due to "failure to keep abreast of current professional theory or practice") by violating 839 Indiana Administrative Code 1-5-5(1) (2007) ("A mental health counselor's primary professional responsibility is to the client. The mental health counselor shall make every reasonable effort to advance the welfare and best interests of the client, including respecting the rights of those persons seeking assistance and making reasonable efforts to ensure that the mental health counselor's services are used appropriately."); (2) Indiana Code section 25-1-9-4(a)(4)(B) by

6

violating 839 Indiana Administrative Code 1-5-5(9) ("The mental health counselor is aware of anything that might interfere with the counselor's effectiveness and shall refrain from any activity that might lead to inadequate performance or harm to anyone, including himself or herself and the client."); (3) Indiana Code section 25-1-9-6.7(2) (1998) ("failed to meet the minimum standards of performance in professional activities when measured against generally prevailing peer performance in professional activities, including the undertaking of activities that the practitioner is not qualified by training or experience to undertake"); and (4) Indiana Code section 25-1-9-6.7(3) ("performed services, including any duties required of the individual under IC 31, in reckless disregard of the best interests of a patient, a client, or the public"). The court further noted that any one of the four violations would have been sufficient to justify revoking Williams's license. Appellants' App. p. 111.

The court addressed Williams's concern about the emergency suspension but concluded it did not affect the validity of the Board's final order revoking her license. It also addressed her concern about Stockton: "The record is clear that in each instance here, other Board members explained and corrected Stockton, and that Stockton[ ] reversed his original position, did consider all the evid[e]nce, and his preliminary remarks had no lasting effect on his deliberations or the deliberations of any other Board member that would justify overturning the Board's decision." *Id.* at 118.

Concluding that Williams had failed to sustain her burden of proving that the revocation should be overturned, the court denied her summary judgment motion, confirmed and ratified the Board's decision, and lifted the stay previously issued.

7

Williams then filed a motion to correct error. At the start of the hearing on the motion, the court explained that it did not believe the Board's violation findings were in error. *See* Tr. p. 59 ("As I read the record and from my finding[s] it's obvious I mean I, I thought there was evidence from which boundaries violations could clearly be established. So I, I don't see the Court revisiting that."). Instead, the court was troubled by the harshness of the sanction. *See id.* at 58 ("[W]hat authority do you think the Court has . . . on the one hand affirming . . . the Board[']s Findings and Conclusions as I already have but revisiting the sanction?").

In March 2013, the court issued a second order in which it concluded that the sanction of license revocation was too severe in light of the record before it.[2] It determined that several circumstances led to a "well-founded" "concern about the fairness" of the Board proceedings. Appellants' App. p. 208. As to the emergency suspension hearing, it noted that Williams was denied a continuance without an explanation of the "emergency" and that the suspension was initially granted without a quorum. As to the hearing on the administrative complaint, it again questioned the credibility of both the State's witnesses, particularly Patient A; determined Stockton's actions gave a perception of unfairness; and found it unreasonable that for a lengthy hearing lasting late into the night, Williams was given only ten minutes for closing argument and denied the opportunity to submit a brief instead.

---

[2] Though immaterial to the issue before us, we note the second order amended the findings quoted above from the first order to state that Williams ceased being Patient A's therapist in 2008 or 2009 (not 2010 as indicated in the first order), and at that point she continued to see Patient A as a friend and advocated for her with other health care providers.

8

The focus of the trial court's second order was on its perceived impropriety of the sanction:

> 11.   The record is totally devoid of any explanation of the evidence or factors relied on for imposing a sanction, totally devoid of any recitation of standards for imposing sanctions, totally devoid of any facts and policies from which the court might conclude that the sanction was objectively reasonable or proportionate.
> . . . .
> 16.   The Court is particularly concerned about the penalty of "revocation" of Dr. Williams' license to practice mental health counseling given the facts of this case, the absence of prior complaints against her, and the Board's failure to articulate any identified standards for punishment, or a basis for the particular punishment selected in this case.
> . . . .
> 18.   The Board has not promulgated any specific standards for the disciplining of licensees.  In this regard, licensees are not in a position to know just what penalty could be imposed for various alleged violations. While the statute provides that the penalty variation can be from reprimand to revocation, there is no standard set for what conduct might determine what penalty.

*Id.* at 207-08.  Noting Williams's property interest in her license, the court concluded that "the decision regarding the penalty was arbitrary, capricious, an abuse of discretion, and not in accordance with the law."  *Id.* at 210.  It therefore reversed the Board's decision and remanded with instructions to impose a lesser sanction or to hold a new hearing:

> 1.   This case is reversed and remanded to the Board with instructions to impose either a reprimand or modest suspension supported by the record already before it, or
> 2.   Hold a new hearing on the complaint filed against Dr. Williams, and, if it finds a violation and imposes a sanction, to set out with particularity in its amended findings and order the penalty criteria employed and the facts and circumstances supporting the sanction, keeping in mind that meaningful judicial review requires a record that is defensible based on objective reasonableness and proportionality . . . .

*Id.* at 211.  The Board now appeals.

DISCUSSION AND DECISION[3]

The Administrative Orders and Procedures Act limits judicial review of agency action:

> The court shall grant relief . . . only if it determines that a person seeking judicial relief has been prejudiced by an agency action that is:
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (2) contrary to constitutional right, power, privilege, or immunity;
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (4) without observance of procedure required by law; or
> (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d) (1987); *Huffman v. Office of Envtl. Adjudication*, 811 N.E.2d 806, 809 (Ind. 2004). We stand in the same position as that of the trial court when reviewing a decision of an administrative agency. *Filter Specialists, Inc. v. Brooks*, 906 N.E.2d 835, 844 (Ind. 2009). We give deference to the expertise of the agency and will not reverse simply because we may have reached a different result. *Id.* We defer to the agency's findings of fact, if supported by substantial evidence, but review questions of law de novo. *Huffman*, 811 N.E.2d at 809.

Upon finding that Williams had committed two violations under Section 25-1-9-4 and two violations under Section 25-1-9-6.7, the Board revoked her license pursuant to Indiana Code section 25-1-9-9(a) (2001), which provides:

---

[3] Williams filed a Verified Motion to Dismiss Appeal on June 28, 2013, and a Second Motion to Dismiss Appeal on September 17, 2013. Both motions were denied by our motions panel. In the Appellee's Brief, Williams again asks us to dismiss this appeal for the same reasons presented in her previous motions. We see no reason to depart from the decisions of our motions panel and thus decline her request.

The board may impose any of the following sanctions, singly or in combination, if it finds that a practitioner is subject to disciplinary sanctions under section 4, 5, 6, 6.7, or 6.9 of this chapter or IC 25-1-5-4:
    (1) Permanently revoke a practitioner's license.
    (2) Suspend a practitioner's license.
    (3) Censure a practitioner.
    (4) Issue a letter of reprimand.
    (5) Place a practitioner on probation status . . . .
    (6) Assess a fine against the practitioner . . . .

The trial court initially affirmed the Board's decision, but then reversed on Williams's motion to correct error. The court's order on the motion to correct error shows it was troubled with the Board's severe sanction of revocation, not with any determination that Williams's conduct warranted a sanction. We can draw no other conclusion from its remand ordering either a lesser sanction or a new hearing.

Upon finding that Williams was subject to discipline, however, the Board could impose any sanction authorized by Section 25-1-9-9, one of which includes "[p]ermanently revok[ing the] practitioner's license."

The trial court nonetheless concluded that the Board's decision to impose the harshest sanction of revocation was arbitrary and capricious in light of: (1) the absence of evidence of prior disciplinary actions against Williams; (2) what the court believed to be the improper use of Section 25-1-9-4; (3) the credibility of the State's witnesses; (4) other facts leading the court to believe there was a reasonable perception of unfairness in the proceedings (the denial of a continuance of the emergency suspension hearing, the grant of the suspension without a quorum, Stockton's statements, and the allotment of only ten minutes for Williams's closing argument); and (5) the Board's lack of a standard in determining the appropriate sanction.

11

An arbitrary and capricious decision is one that is patently unreasonable. *A.B. v. State*, 949 N.E.2d 1204, 1217 (Ind. 2011). Such a decision is made without consideration of the facts and in total disregard of the circumstances and lacks any basis that might lead a reasonable person to the same conclusion. *Id.*

Progressive discipline not required. While there was no evidence that Williams had been the subject of any prior disciplinary actions, we find nothing in our statutes or caselaw that requires a system of progressive discipline. Indeed, a recent decision of this Court affirmed the revocation of a nursing license even though the licensee had no prior disciplinary incidents in her twenty-two years of practice. *See Davis v. Ind. State Bd. of Nursing*, 3 N.E.3d 541, 542-43 (Ind. Ct. App. 2013).

Use of Section 25-1-9-4. The trial court determined that Section 25-1-9-4(a)(4)(B) (continuing to practice although unfit to practice due to "failure to keep abreast of current professional theory or practice") was "improperly utilized" by the Board to revoke Williams's license. Appellants' App. p. 210. The order provided no explanation of how the statute was improperly used but cited *Indiana Real Estate Commission v. Kirkland*, 256 Ind. 249, 268 N.E.2d 105 (1971). In *Kirkland*, an administrative agency revoked a real estate broker's license pursuant to a statute that prohibited him from "[f]ailing to account and remit any moneys coming into his possession belonging to others." *Id.* at 253, 107. The Supreme Court affirmed the trial court's reinstatement of the broker's license because there was no evidence that he failed to account and remit moneys coming into his possession belonging to another. *Id.* at 256, 109.

12

*Kirkland* involved administrative proceedings based on an entirely different statute with entirely different circumstances from those before us.  Here, the Board determined Williams had violated Section 25-1-9-4(a)(4)(B) by failing to meet the standards for the competent practice of mental health counseling set forth in 839 Indiana Administrative Code 1-5-5(1) and 839 Indiana Administrative Code 1-5-5(9).  To the extent the trial court believed the Board's use of Section 25-1-9-4(a)(4)(B) was not meant to be applied in such a manner, we note that reviewing courts defer to an administrative agency's reasonable interpretation of a statute it is charged with enforcing, even over an equally reasonable interpretation by another party.  *Chrysler Group, LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 124 (Ind. 2012).

Moreover, the Board's revocation was based not only on two violations of Section 25-1-9-4 but also on two violations of Section 25-1-9-6.7.  The trial court's initial order concluded that any one of the violations would have been sufficient to justify revoking Williams's license.  While its subsequent order faulted the Board's use of Section 25-1-9-4, it found nothing deficient with the Board's application of Section 25-1-9-6.7.  Even by the court's own terms, then, its concern about Section 25-1-9-4 did not affect the determination that Williams's conduct justified revocation.

Witness credibility.  The trial court was concerned with the credibility of both State's witnesses, particularly Patient A.  It questioned Patient A's credibility in light of her medical diagnoses, thus decided that other evidence was necessary to justify revocation, and faulted the Board for disregarding Williams's evidence:

13

9. The record herein established that Patient A suffered from Dissociative Identity Disorder, Posttraumatic Stress Disorder, Depression, and Schizophrenia. With this diagnosis, there is a serious question about Patient A's trustworthiness as a witness. Even assuming the Board properly found Patient A to be competent, due process requires that her testimony be given limited weight, and that Board findings sufficient to revoke a license must constitutionally rest on additional compelling, trustworthy evidence.

. . . .

13. Because of the mental illness of Patient A and the contradictions and confusion in her testimony, the Court concludes that her testimony standing alone was insufficient to support a license revocation. Furthermore, the record demonstrates she was impeached and yet the Board accepted her testimony and disregarded Dr. Williams' evidence . . . .

Appellants' App. pp. 207, 210. On appeal, Williams agrees with the trial court, arguing that Patient A's testimony was impeached, that she was not a credible witness, and that the Board's findings improperly relied solely on the State's evidence.

But judging witness credibility and weighing evidence was not within the province of the trial court. *See Rynerson v. City of Franklin*, 669 N.E.2d 964, 971 (Ind. 1996) ("The court reviewing an administrative determination may not determine questions of credibility or weigh conflicting evidence and choose that which it sees fit to rely upon in determining whether there was substantial evidence to support an administrative action."). Instead, they were matters for the Board to resolve. And while we disagree with the court's bald assertion that findings sufficient to support revocation necessarily required evidence outside of Patient A's testimony, there were in any event several emails from Williams to Patient A documenting Williams's inappropriate conduct.

Perception of unfairness in proceedings. As to any perception of unfairness in the proceedings, we note that Williams had the burden of demonstrating the invalidity of the

14

Board's action on judicial review, *see* Ind. Code § 4-21.5-5-14(a), and that the court will grant relief "only if it determines that a person seeking judicial relief has been prejudiced by an agency action," Ind. Code § 4-21.5-5-14(d). We simply cannot conclude that the proceedings before the Board were unfair or that Williams was prejudiced. As noted in the trial court's initial order, any concerns about the emergency suspension, later rescinded, did not affect the validity of the Board's final order revoking Williams's license. Moreover, we cannot say that Stockton's comments caused any prejudice as he essentially reversed his positions and considered all the evidence after legal processes were explained to him. Nor can we say that ten minutes for closing argument was patently unreasonable. In short, although Williams may not have received perfect proceedings, we are confident she received fair proceedings.

Lack of standard. Finally, the trial court was concerned about the Board's lack of a standard in determining the appropriate sanction. It cited *Indiana State Board of Health Facility Administrators v. Werner*, 841 N.E.2d 1196 (Ind. Ct. App. 2006), *clarified on reh'g*, 846 N.E.2d 669 (2006), *trans. denied*, to support its assertion that the Board here should have had "some minimal standards" for imposing revocation. Appellants' App. p. 209. In *Werner*, an administrative law judge conducted a hearing at which "voluminous amounts of evidence" were presented. 841 N.E.2d at 1207. Following the hearing, the ALJ entered extensive findings and conclusions and ultimately recommended that Werner be censured. The State objected to the ALJ's order. After oral argument, the Board rejected the ALJ's recommended findings, conclusions, and sanction and instead suspended Werner's license indefinitely with an opportunity to have it reinstated in five

15

years. On Werner's motion to vacate, the Board vacated its earlier order, adopted the ALJ's findings and conclusions, but ratified its previous sanction of indefinite suspension.

This Court determined that the Board's decision to impose a significantly more severe sanction than recommended by the ALJ on the very same findings and conclusions of the ALJ was arbitrary and capricious because it left us to speculate as to the basis for its decision. *Id.* at 1208. We thus concluded the Board erred by failing to explain its decision to impose a more severe sanction. *Id.* at 1209.

*Werner* says nothing about having a public standard for imposing sanctions. It merely concluded that the Board could not adopt the ALJ's findings and conclusions but then impose a more severe sanction without explanation. In this case, there was no ALJ. The administrative complaint was heard directly before the Board, and the Board then issued findings and conclusions explaining its decision to revoke Williams's license. *Werner* thus provides no support for reversal here.

The trial court lamented the absence of any public standard that would allow it to evaluate whether the sanction of revocation was proper. Appellants' App. p. 207. Williams urges on appeal that, without such a standard, the actions of the Board were arbitrary and capricious. Appellee's Br. p. 30. However, our Supreme Court has recognized that "judicial inquiries into the private motivation or reasoning of administrative decisionmakers is a substantial intrusion into the functions of the other branches of government." *Med. Licensing Bd. of Ind. v. Provisor*, 669 N.E.2d 406, 410

(Ind. 1996). The Court thus affirmed the general bar against probing the mental processes of administrative decisionmakers in their private deliberations. *Id.*

Nor does this give the Board "unbridled discretion" to impose any sanction authorized by statute irrespective of the circumstances. Appellants' App. p. 208. Instead, the Indiana Code requires some level of consistency in the imposition of sanctions: "The board shall seek to achieve consistency in the application of the sanctions authorized in this section. Significant departures from prior decisions involving similar conduct must be explained in the board's findings or orders." Ind. Code § 25-1-9-13 (1988). Williams made no showing that the sanction of revocation for her conduct was a significant departure from prior decisions involving similar conduct such that the Board was required to provide an explanation.

The evidence shows that Williams involved herself in Patient A's personal life and continued to contact her despite Patient A's requests to be left alone. In her emails to Patient A, she expressed her love for Patient A and the pain caused by Patient A's rejection of her. Williams's unwanted attempts to contact Patient A caused Patient A to call the police twice regarding Williams's behavior, move away from her home, change her phone number, and change her email account. The situation with Williams was traumatic for Patient A and caused her to feel fear. In light of this evidence, the trial court improperly substituted its judgment for that of the Board when it determined that revocation was too severe a sanction.

## CONCLUSION

We conclude the Board afforded Williams fair proceedings and acted within its authority in revoking her license. We therefore affirm its decision in all respects.

Affirmed.

VAIDIK, C.J., and BAILEY, J., concur.