FILED

Feb 28 2017, 6:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Paul R. Sturm
Shambaugh Kast Beck & Williams, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Daniel J. Borgmann
Helmke Beams LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Danielle Maple,

*Appellant-Respondent,*

v.

Travis Maple,

*Appellee-Petitioner*

February 28, 2017

Court of Appeals Case No.
02A03-1608-DR-1889

Appeal from the Allen Circuit
Court

The Honorable Thomas J. Felts,
Judge

The Honorable John D. Kitch, III,
Magistrate

Trial Court Cause No.
02C01-0908-DR-756

**Vaidik, Chief Judge.**

# Case Summary

[1] In order to have a child-support order modified, the parent seeking modification must prove that either there was a change in circumstances so substantial and continuing as to make the prior order unreasonable, or that at least twelve months have passed since the issuance of the prior order and that the amount of support would change by more than 20% from the prior order. Our Supreme Court has held that when a parent relies on a change in income as a basis for modification but the change in support would not be more than 20%, that parent must prove that one or more other factors "converged" with the change in income to establish the requisite "substantial and continuing" change. It is an uncommon occurrence for a parent to meet this burden.

[2] In this case, Father requested that the trial court modify his child-support obligation based on changes in his and Mother's incomes and other factors. He argued that these changes "converged" to established a change in circumstances so substantial and continuing as to make the prior order unreasonable. The trial court recalculated Father's support obligation, which differed by less than 20% from the prior order. The court issued the modified child-support order, citing changed circumstances as the basis for modification. Mother appeals.

[3] One of the changed circumstances relied upon by Father and the trial court is that Mother's legal duty of support for her prior-born child was set by the trial court at $66 per week instead of $121, as represented on the prior-born child's child-support worksheet. That worksheet was still in effect and was not subject

to review in these proceedings.  Concluding that the trial court erred when it set Mother's legal duty of support for her prior-born child at an amount lower than what was on her child-support worksheet and that Father has not otherwise proven a change in circumstances so substantial and continuing as to make the prior order unreasonable, we reverse and remand with instructions.

# Facts and Procedural History

[4]     Before her relationship with Travis Maple ("Father"), Danielle Maple ("Mother") gave birth to a child, J.W.  When her relationship with J.W.'s father ended, Mother retained primary physical custody of J.W and sought a child-support order.  In 2005, the trial court in that matter used a Child Support Obligation Worksheet to calculate child support, which, in part, set Mother's legal duty of support for J.W. at $121 per week[1] (Line 6 – "PARENT'S CHILD SUPPORT OBLIGATION") and J.W.'s father's child-support obligation at $86 per week ("2005 worksheet").  The court adopted the 2005 worksheet in its child-support order, which was still in effect at the time of this proceeding.  The 2005 child-support worksheet reads as follows:

---

[1] The Indiana Child Support Guidelines ("Guidelines") explain that a "legal duty of support" for a prior-born child occurs when a custodial parent does not have a support order entered against her but that parent has a duty to support the child when in her custody.  *See* Ind. Child Support Guideline 3(C).

| IN RE: THE PATERNITY OF: | | CASE NO.: 02D07-0404-JP-223 | |
|---|---|---|---|
| | | MOTHER: DANIELLE A. WEIKART | |

**CHILD SUPPORT OBLIGATION WORKSHEET (CSOW)**

| Children | DOB | Children | DOB |
|---|---|---|---|
| ▇▇▇▇▇▇▇ | 11/04/03 | | |

| | FATHER | MOTHER | |
|---|---|---|---|
| 0. WEEKLY GROSS INCOME<br>Multipliers .935 .903 .878 .863 .854<br>Subsequent Children in the home | $500.00<br><br>0 | $442.00<br><br>0 | |
| 1. WEEKLY GROSS INCOME (multiplied) | $500.00 | $442.00 | |
| A. Child Support Order for prior born | $0.00 | $0.00 | |
| B. Child Support Duty for prior born | $0.00 | $0.00 | |
| C. Maintenance Paid | $0.00 | $0.00 | |
| D. WEEKLY ADJUSTED INCOME (WAI) | $500.00 | $442.00 | $942.00 |
| 2. PERCENTAGE SHARE OF TOTAL WAI | 53.0786% | 46.9214% | |
| 3. COMBINED WEEKLY ADJUSTED INCOME | | | $942.00 |
| 4. BASIC CHILD SUPPORT OBLIGATION | | | $145.00 |
| A. Work-related Child Care Expense | $0.00 | $100.00 | $100.00 |
| B. Weekly health premium for children | | | $12.25 |
| 5. TOTAL CHILD SUPPORT OBLIGATION | | | $257.25 |
| 6. PARENT'S CHILD SUPPORT OBLIGATION | $136.54 | $120.71 | |
| 7. Adjustment from Line J.<br>Credit for child care expense<br>Credit for health premium<br>Credit for parenting time for 142 overnights | $0.00<br>$0.00<br>$0.00<br>$50.76 | $0.00<br>$100.00<br>$12.25<br>$0.00 | |
| 8. RECOMMENDED SUPPORT OBLIGATION | $85.78 | | |

EXPLAIN ANY DEVIATION FROM GUIDELINE SCHEDULES IN ORDER/DECREE

I affirm under the penalties for perjury the foregoing representations are true.

Preparer: _____ Father: _____

Dated: 09/16/2005 Mother: _____

Mother should pay the first $452.40 annual uninsured medical.
Calculated for 1 at home and 0 at college using year 2005 guidelines and 142 overnights.
Copyright 1989-2005 Professional Software Corporation 812-833-3781
www.SupportMasterSoftware.com
48

Appellant's App. p. 48 (emphasis added).

[5]    Sometime after her relationship with J.W.'s father ended, Mother and Father were married. During their marriage they had two children, K.M. and A.M., who are both still minors. Mother and Father divorced in 2009. In September 2012, Mother and Father jointly petitioned the court to modify child support and custody. The court granted them joint legal custody and Mother primary physical custody ("2012 order"). The 2012 order also granted Father 122 annual overnights, including every other weekend and one additional weekend

per month, as well as a midweek visit up to four hours. Father's child-support obligation was set at $245 per week. *Id.* at 37.

[6] Approximately two years later, Mother petitioned the court for a modification of custody and parenting time and requested attorney's fees. Among other things, Mother sought sole legal custody of K.M. and A.M. Father then moved to modify child support. At the joint hearing on Mother's petition and Father's motion, the parents disagreed on the amount of parenting time Father was exercising. Mother testified that Father did not exercise his parenting time "four summers in a row." Cons. Tr. p. 118. Father argued that he exercised more parenting time than Mother claimed.

[7] Regarding child support, Mother and Father agreed on all figures except for Mother's legal duty of support for J.W. Mother submitted a copy of the 2005 worksheet, showing that her legal duty of support for J.W. was $121 per week. Father's counsel questioned Mother about the accuracy of the 2005 worksheet, and she admitted that several numbers on the worksheet were no longer accurate: her income had increased by $150 per week; J.W.'s father's income had roughly tripled; her work-related child-care expenses were lower; J.W.'s father's overnight parenting time had changed; and both she and J.W.'s father had at least one subsequent-born child. *Id.* at 122-24. Despite these changes, Mother argued that the court should set her legal duty of support for J.W. at $121 per week because the duty for a prior-born child "is based upon the current Court Order." *Id.* at 111. Mother also stated that, even with the changes, J.W.'s father's child-support obligation "went up just maybe five dollars ($5)."

*Id.* at 119. Father, on the other hand, argued that Mother's legal duty of support for J.W. should be set at $66 per week, not $121. When questioned about how he came up with that amount, Father stated, "[M]y attorney provided me with that information. . . . I do not know how to calculate it." *Id.* at 103.

[8] The trial court ordered that Mother and Father would retain joint legal custody of K.M. and A.M. and that each parent would be responsible for their own individual attorney's fees. However, the court modified the 2012 parenting-time schedule: Father's annual overnights were reduced from 122 to 104;[2] he retained overnights every other weekend but lost the additional weekend every month. Father does not appeal the reduction of his parenting time.

[9] Finding that Father "demonstrated a substantial and continuing change in circumstances that makes the previously entered child support Order unreasonable," Appellant's App. Vol. II p. 26, the court recalculated Father's child-support obligation. In its calculation, the court adopted the numbers submitted by Mother and Father, including their 2015 W-2s: Father earned or was capable of earning $883 per week (a decrease of $98.31 per week from the 2012 order); Mother earned or was capable of earning $592 per week (an increase of $192 per week from the 2012 order); Father paid $20 per week in

---

[2] Nothing in the record indicates how the court reached the total of 104 annual overnights. The record indicates that Father was given standard parenting time per the Guidelines, which would amount to 96-100 annual overnights. *See* Ind. Child Support Guideline 6.

work-related child-care expenses; Mother paid $130 per week in work-related child-care expenses; and both Mother and Father paid $7 per week in health-insurance premiums for K.M. and A.M. *Id.* at 25. The court rejected Mother's argument that it must use the value on Line 6 of the 2005 worksheet as the value on Line 1C ("Child Support Duty for prior born") of the 2016 worksheet. Rather, the court agreed with Father that Mother's legal duty to support J.W. was only $66 per week, not $121. The 2016 child-support worksheet reads as follows:

```
                          CASE NO.:  02C01-0908-DR-756
                          FATHER:
                          MOTHER:

         CHILD SUPPORT OBLIGATION WORKSHEET (CSOW)

   Children          DOB            Children           DOB

[redacted]

1. WEEKLY GROSS INCOME          FATHER    MOTHER
                                $883.00   $592.00
A. Subsequent Children Credit, .065, .097, 1... $57.40  1  $38.48
B. Child Support Order for prior born  $0.00    $0.00
C. Child Support Duty for prior born   $0.00   [$66.00]
D. Maintenance Paid                    $0.00    $0.00
E. WEEKLY ADJUSTED INCOME (WAI)      $825.60  $487.52
2. PERCENTAGE SHARE OF TOTAL WAI    62.8732%  37.1268%
3. COMBINED WEEKLY ADJUSTED INCOME            $1,313.12
4. BASIC CHILD SUPPORT OBLIGATION   $177.30  $104.70  $282.00
A. Work-related Child Care Expense   $20.00  $130.00  $150.00
B. Weekly Health Insurance Premium (children part)    $14.00
5. TOTAL CHILD SUPPORT OBLIGATION                     $446.00
6. PARENT'S CHILD SUPPORT OBLIGATION $280.41  $165.59
7. Adjustment from PSEW Line J.       $0.00    $0.00
   Credit for child care payment from 4A  $20.00  $130.00
   Credit for health insurance premium (children part)  $7.00
   Credit for parenting time for 104 overnights $48.34  $0.00
8. RECOMMENDED SUPPORT OBLIGATION    $205.07

I affirm under the penalties for perjury the foregoing representations are true.

Preparer:                    Father:_____

Dated: 04/24/2016            Mother:_____

Mother should pay the first $879.84 annual uninsured health care. (CSOW 4. + PSEW I
Balance of Annual Expenses to be paid: 62.8732% by Father; 37.1268% by Mother.
Calculated for 2 at home and 0 at college using year 2016 guidelines and 104 overni

    Copyright 1989-2016 Professional Software Corporation 812-781-1422
              www.SupportMasterSoftware.com
                          28
```

*Id.* at 28 (emphasis added). Father's child-support obligation was reduced from $245 per week to $205 per week, a decrease of 16.33%.

[10] Mother now appeals.

# Discussion and Decision

[11] Mother argues that Father has failed to satisfy the statutory requirements for modification of his child-support obligation. Specifically, she contends that the changed circumstances are not so substantial and continuing as to make the 2012 child-support order unreasonable. Whether there was a substantial and continuing change in circumstances to render the prior child-support order unreasonable is a mixed question of law and fact. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 941 (Ind. 2005). "To the extent it is a question of law, it is the duty of the appellate court to give it de novo review—and doing so promotes values of consistency, predictability, and enunciation of standards that curb arbitrariness." *Id.*

[12] (b) A child-support order can only be modified:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

> (2) upon a showing that:

>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%)

> from the amount that would be ordered by applying the
> child support guidelines; and
>
> (B) the order requested to be modified or revoked was
> issued at least twelve (12) months before the petition
> requesting modification was filed.

Ind. Code § 31-16-8-1(b). The court found, and Father concedes on appeal, that the change in Father's child-support obligation was only 16.33% and did not meet the 20% threshold for modification under subsection (b)(2). Appellant's App. Vol. II p. 26; Appellee's Br. p. 9. However, the trial court found that Father had satisfied subsection (b)(1) and therefore had proven that there was a "substantial and continuing change that makes the previously entered child support Order unreasonable." Appellant's App. Vol. II p. 26.

[13] When a parent relies upon a change in income as the basis for modification and the modification does not differ by more than 20% from the prior order, modification under subsection (b)(1) is rarely appropriate. In *MacLafferty*, the father argued that an increase in the mother's weekly income justified a modification of his child-support obligation. Although the father's child-support obligation did not differ by more than 20%, thus failing to satisfy Section 31-16-8-1(b)(2), the trial court concluded that the increase in the mother's income was so substantial and continuing as to make the prior order unreasonable and granted the father's modification request. Our Supreme Court reversed and explained that when a change in the parent's income would modify the child-support order by less than 20%, that change, by itself, is not

enough to meet the statutory burden of subsection (b)(1), but "[t]here may be situations where a variety of factors converge to make such a modification permissible under the terms of the statute. While we do not find this case to be such a situation, we do not foreclose such a possibility." *MacLafferty*, 829 N.E.2d at 942. In other words, in order to satisfy subsection (b)(1) a parent must prove that one or more factors, in addition to any change in income, have "converged" to create a change in circumstances so substantial and continuing as to make the prior order unreasonable. Although *MacLafferty* did not foreclose the possibility, it will be uncommon for multiple factors to "converge" to create a change in circumstances so substantial and continuing as to make the prior order unreasonable. This case is not one of those instances. *See Patton v. Patton*, 48 N.E.3d 17 (Ind. Ct. App. 2015) (holding that an emancipated child was a "substantial and continuing change" that warranted modification of father's child-support obligation); *Borum v. Owens*, 852 N.E.2d 966 (Ind. Ct. App. 2006) (concluding that a child's marriage was a "substantial change in circumstances" that rendered father's college expense obligation unreasonable).

[14] Neither Mother nor Father disputes their changed incomes, and Father does not argue that the changed incomes by themselves justify a modification. Rather, Father relies on *MacLafferty* and contends that there were several other factors that "converged" to create a change in circumstances so substantial and continuing as to make the prior order unreasonable. Appellee's Br. p. 11. Those changed circumstances are: a change in weekly work-related child-care expenses; a change in the allocation of payment of the weekly work-related

child-care expenses; a change in the weekly health-insurance premium; a change in Father's parenting time; and a change in Mother's legal duty of support for J.W. *Id.* at 7. We disagree with Father.

[15] Three of the changed circumstances that Father relies on are nominal. There was an increase of $2 per week in the work-related child-care expenses, from $148 to $150 per week. The allocation of payment of the work-related child-care expenses also changed: Mother's payment decreased $18 per week to $130, and Father's payment increased from $0 to $20 per week. Last, the change in weekly health-insurance premiums decreased for both Father and Mother by $1 per week and $0.50 per week, respectively.

[16] Father also relies on the decrease in his parenting time as justification for a reduction in his child-support obligation. The Guidelines state, "A credit should be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." Ind. Child Support Guideline 6. In other words, a reduction in Father's parenting time would support an **increase** in his child-support obligation, not a **decrease**.

[17] Regarding Mother's legal duty of support for J.W., Father argues that the 2005 worksheet is no longer accurate and that Mother's current duty is actually $66 per week, based on information from his attorney. On the other hand, Mother contends that the trial court erred when it set her duty at $66 per week instead of $121, as indicated on the 2005 worksheet. We agree with Mother. Mother's legal duty of support for J.W. was set in the 2005 child-support order, which

remains in effect. As a matter of law, when a child-support order is in effect for a prior-born child, another court must follow that order when calculating child support for subsequent-born children. To permit the subsequent court to do otherwise would allow that court to re-litigate child-support orders that are not subject to the case before it. This would create a trial within a trial and open the door to countless issues, including hauling third parties into court who are not subject to the underlying case.

[18] Furthermore, to allow a trial court to proceed in this manner could very likely run afoul of the Guidelines' objectives and result in inconsistent outcomes. *See* Ind. Child Support Guideline 1 ("The Guidelines have three objectives: . . . (2) To make awards more equitable by ensuring more consistent treatment of people in similar circumstances . . . ."). For example, in this case, Mother would have two different court orders regarding her legal duty of support for J.W., one setting her duty at $121 per week and another order setting it at $66 per week. Expanding beyond this case, trial courts would have the option of deciding whether or not to re-litigate a prior child-support order's legal duty amount or to adopt the order as is. Allowing the trial court to have this option could result in inconsistent outcomes for similarly situated families, which the Guidelines explicitly guard against.

[19] For the foregoing reasons we conclude that the trial court should not have set Mother's legal duty of support for J.W., her prior-born child, at an amount less than what was calculated by the previous court. Furthermore, we conclude that, like *MacLafferty*, the factors relied upon by Father do not "converge" to

create a "change in circumstances so substantial and continuing as to make the terms" of the 2012 child-support order "unreasonable." I.C. § 31-16-8-1(b)(1). We reverse the issuance of the 2016 child-support order and reinstate the 2012 order. We further order the trial court to set this matter for hearing within sixty days of the certification of this opinion by the clerk to calculate the amount of arrearage Father owes, dating back to the implementation of the erroneous 2016 order, and to set an appropriate repayment schedule for Father.

[20] Reversed and remanded with instructions.

Bradford, J., and Brown, J., concur.