# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 24 2018, 5:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Matthew T. Black
Adam Clay
Black Clay LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Ary Avnet
Metzger Rosta, LLP
Noblesville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Marriage of: | May 24, 2018 |
| Bobbie Sales (f/k/a Bobbie Herron), | Court of Appeals Case No. 29A02-1709-DR-2150 |
| *Appellant-Respondent,* | Appeal from the Hamilton Superior Court |
| v. | The Honorable Steven R. Nation, Special Judge |
| Richard Allen Moulder, Jr., | Trial Court Cause No. 29D01-1112-DR-12869 |
| *Appellee-Petitioner.* | |

**Kirsch, Judge.**

Bobbie Sales, formerly known as Bobbie Herron, ("Mother") appeals the trial court's order denying her petition for modification of custody and parenting time for her children, K.M. and R.M., raising the following restated issues:

I. Whether the trial court erred by denying Mother's petition for modification of custody;

II. Whether the trial court erred by restricting Mother's parenting time and access to K.M.'s and R.M.'s educational records; and

III. Whether the trial court erred by modifying child support.

We affirm in part, reverse in part, and remand with instructions.[1]

## Facts and Procedural History[2]

Mother and Richard Allen Moulder, Jr. ("Father") (together, "Parents") were married in 2007 and had two children, K.M., born October 11, 2008, and R.M., born January 19, 2010 (together, "Children"). Parents' marriage was dissolved by "Waiver of Final Hearing, Mediated Settlement Agreement, and Decree of Dissolution of Marriage," which the trial court approved on September 5, 2012. Pursuant to that Decree, Parents agreed to share joint legal custody of Children,

---

[1] By separate order, we deny Father's motion for oral argument.

[2] The facts are, in part, taken from the "Preliminary Findings and Conclusions" that the trial court made in its March 17, 2015 "Findings of Fact, Conclusions of Law, and Order." *Appellant's App. Vol. 2* at 64-85. Because Mother petitioned the trial court to modify that order's terms of custody, and we focus on events that occurred after the March 2015 Order, we include facts that occurred between September 5, 2012 and March 17, 2015 only for historical context.

with Mother having primary physical custody subject to Father's parenting time and reasonable phone contact. Both Parents also agreed to refrain from discussing the other with Children except in a manner that was "supportive of or complementary to the other" and "refrain from any effort to alienate the children from the other party, the absolute aim of the parties to be a healthy, respectful relationship between the children and each party." *Appellee's App. Vol. II* at 3.

[4]     In early 2013, both Parents filed petitions regarding modification of custody, support, and parenting time, and Father filed a petition for rule to show cause. A hearing was held on those pending petitions on July 9, 2013 and, on July 30, 2013, the trial court issued its Order ("the 2013 Order"), finding that Mother had: (1) made "unilateral legal custody decisions"; (2) "intentionally acted to exclude Father from the children's legal custody decisions"; and (3) "engaged in a pattern of conduct aimed at entirely excluding Father from the children's lives." *Id.* at 7. The 2013 Order designated that Father, upon his return to Indiana following his military service in California, would have sole legal custody of and be the primary physical custodian for Children. However, Mother was granted physical custody of Children until Father's return. The 2013 Order required Mother to "attend psychotherapy with Dr. Mac Greene or another psychotherapist at the recommendation of Dr. Greene" and "execute all necessary documentation so that her psychotherapy and counseling records [could] be obtained by Father." *Id.* at 11. The trial court noted it would

consider restricting Mother's parenting time if she continued to disparage Father and inappropriately involve Children in disputes. *Id*. at 9.

[5] Father returned to Indiana in July 2014 and discovered that Mother had moved Children to Kansas without filing a Notice of Intent to Relocate as required by Indiana law. On Father's motion, the trial court held an emergency hearing and issued its order, requiring Mother to immediately return Children to Father in Hamilton County, Indiana. Thereafter, the trial court, with input from Father's counsel and Mother's then-counsel, ordered that Mother's parenting time be supervised.

[6] On July 25, 2014, Mother filed a Verified Petition for "Ph.D. Forensic Custody Evaluation," and on September 5, 2014, she filed a "Verified, Renewed, Petition for Ph.D. Forensic Custody Evaluation and Advance Hearing on the Matter." *Appellant's App. Vol. 2* at 65. Pursuant to an agreed entry, Parents decided that therapist Janine Miller would perform the custody evaluation at Mother's sole expense; however, around October 29, 2014, Mother withdrew her petition. Father had no objection to the withdrawal of Mother's request for evaluation, but reserved the right to present evidence as to his attorney fees incurred for Mother's request and later withdrawal.

[7] On March 10, 2015, the trial court held a hearing to address ten pending motions, including four of Father's motions to show cause, Mother's motion to enforce parenting time, and Mother's petition for modification of physical and legal custody. On March 17, 2015, the trial court entered its order ("March

2015 Order"), reaffirming Father's sole legal custody and primary physical custody of Children and voicing its concerns about Mother's mental health and the fact that she had not complied with the trial court's past orders to participate in psychotherapy. *Id.* at 78. The trial court found that Mother's 2014 action of moving Children to Kansas, without filing a Notice of Intent to Relocate or notifying Father as to Children's whereabouts, endangered Children's physical health and impaired their emotional development. The trial court also found that Mother remained a flight risk because she was planning to move to California on March 21, 2015, yet had failed to inform Father or the trial court until the March 10, 2015 hearing. Furthermore, the trial held that Mother's disparagement of Father, her inability to display appropriate boundaries with Children, and her continued reports to the police and DCS, were damaging to Children's physical health and impaired their emotional development. Therefore, the trial court found that supervised parenting time for Mother was in Children's best interests until she completed psychotherapy with a licensed professional. Additionally, the trial court ordered Mother to participate in joint therapy with Children and their therapist at a frequency determined by Children's therapist, Jessi Wild ("therapist Wild").

[8]     About eight months later, Father filed a petition for modification of custody. The trial court held a hearing in December 2015, during which Father testified that Mother had made disparaging remarks about Father to Children during telephone calls. Therapist Wild corroborated Father's testimony, as did a recording of a phone call between Mother and Children. Based on the evidence

presented, the trial court found that Mother's "current telephonic contact" with Children was harmful to them and that it was in the best interests of Children that such contact be reduced. *Id.* at 89. Accordingly, the trial court reduced Mother's telephone contact to two days a week and gave Father the option to monitor the calls and to terminate any call he found was inappropriate.

[9] In the spring of 2016, Mother participated in therapy with therapist Wild and Children. On May 26, 2016, the parties filed, and the trial court approved, an agreed entry, which provided: (1) "[Mother] has been in therapy with the parties' children and [therapist Wild] since March 2016"; (2) "[therapist Wild] approves of [Mother] having parenting time with children over the summer; and Parents "agree that [Mother] shall have visitation with the children in California, beginning May 27, 2016 through July 25, 2016." *Id*. at 90.

[10] On July 29, 2016, four days after the end of Children's summer parenting time with Mother, Mother filed her petition for modification of custody, motion for change of judge, and motion for appointment of a guardian ad litem ("Petition for Custody Modification"). *Id*. at 92. Judge Steven R. Nation was selected as special judge on August 12, 2016, and the trial court approved the appointment of a guardian ad litem ("the GAL") on January 19, 2017. *Id*. at 97, 100. In March 2017, the GAL requested a continuation of the scheduled May 2017 custody modification hearing, citing the need to complete the GAL Report. Mother objected to a continuation and requested that the hearing proceed as scheduled or, in the alternative, that the hearing proceed only for the purpose of deciding summer parenting time. *Id*. at 102. The trial court agreed to proceed

with a hearing on summer parenting time and, following the May 18, 2017 hearing, took the matter under advisement until such time as the evidence on all pending motions was complete. The trial court ordered that Mother's parenting time continue to be supervised.

[11] Two months later, on July 21, 2017, the trial court held a hearing on Mother's Petition for Custody Modification. About forty-five days prior to that hearing, the GAL completed and filed with the trial court the GAL Report, which contained facts and procedural history obtained through interviews and contacts with, among others, Parents, Children, school personnel, therapists, doctors and other medical personnel, childcare providers, and references supplied by Mother. During the 2017 hearing, the GAL Report was amended, "made part of the record[,] and admitted into evidence";[3] the individuals who testified at the hearing included, Mother, Father, Father's fiancée, therapist Wild, and the GAL. *Tr. Vol. 2* at 212.

[12] On August 17, 2017, the trial court entered written findings of fact and conclusions thereon ("the instant Order") pursuant to Mother's written request. In the instant Order, the trial court denied Mother's request to modify custody, denied her request to return to unsupervised parenting time and further restricted her supervised parenting time, restricted her access to Children's

---

[3] The version of the GAL Report that was filed with the trial court was amended, on Father's motion, without objection. *Tr. Vol. 2* at 213. That amendment is not pertinent to this appeal.

educational records, and modified Mother's child support order.[4]  Mother now appeals.

# Discussion and Decision

## I. Custody and Parenting Time

Mother contends that the trial court erred when it denied her Petition for Custody Modification.  In that Petition, Mother argued that because it was in Children's best interest to spend more time with her, the trial court should change her parenting time to unsupervised and evaluate Parents' custodial arrangement to determine if modification is in Children's best interests. *Appellant's App. Vol. 2* at 93.

Here, Mother filed the Petition for Custody Modification and, therefore, bore "the burden of demonstrating the existing custody should be altered." *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016).  Indeed, this "more stringent standard" is required to support a change in custody, as opposed to an initial custody determination where there is no presumption for either parent because "permanence and stability are considered best for the welfare and happiness of the child." *Id*. (citation omitted).  When evaluating whether a change of circumstances has occurred that is substantial enough to warrant a modification of custody, the context of the whole environment must be judged, "'and the

---

[4] The trial court also denied as moot Mother's request for summer parenting time. *Appellant's App. Vol. 2* at 59.

effect on the child is what renders a change substantial or inconsequential.'" *Montgomery v. Montgomery*, 59 N.E.3d 343, 350 (Ind. Ct. App. 2016) (quoting *In re Marriage of Sutton*, 16 N.E.3d 481, 485 (Ind. Ct. App. 2014)), *trans. denied*.

[15] The Indiana Supreme Court has expressed a preference for granting latitude and deference to our trial judges in family law matters. *Steele-Giri*, 51 N.E.3d at 124. "'On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.'" *Id.* (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). We neither reweigh the evidence nor assess witness credibility. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010). Rather, we consider only the evidence and inferences most favorable to the trial court's judgment. *Id.*

[16] By appealing the denial of her request to modify custody and parenting time, Mother appeals from a negative judgment. *See Nunn v. Nunn*, 791 N.E.2d 779, 783 (Ind. Ct. App. 2003). We will reverse a negative judgment only if it is contrary to law, meaning that the evidence points unerringly to a conclusion different from that reached by the trial court. *Id.*

[17] Pursuant to Indiana Code section 31-17-2-21(a), a trial court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one or more of the factors that the court may consider under section 8 of this chapter. The pertinent factors in section 8 include: (1) the wishes of the child's parent or parents; (2) the

interaction and interrelationship of the child with his or her parents, siblings, and anyone else significant to the child's best interest; (3) the child's adjustment to his or her home, school, and community; and (4) the mental and physical health of all individuals involved. Ind. Code § 31-17-2-8.

[18] Here, Mother's actions have caused her custody and parenting time to become more restricted over time. In 2012, as part of the mediated dissolution, Parents agreed that they would share joint legal custody of Children and that Mother would have primary physical custody subject to Father's parenting time. In its 2013 Order, the trial court, citing Mother's "unilateral legal custody decisions" and intentional exclusion of Father in Children's lives, modified Parents' custody arrangement and granted Father sole legal custody and primary physical custody of Children. *Appellee's App. Vol. II at 7.* By 2015, the trial court found it was in Children's best interest that Mother's parenting time be supervised until she completed psychotherapy with a licensed professional. *Appellant's App. Vol. 2 at 79.* The trial court found that Mother's 2014 action of relocating Children to Kansas without notifying Father or the State endangered Children's physical health and impaired their emotional development. *Id.* Furthermore, the trial court held that Mother's disparagement of Father in front of Children, her inability to display appropriate boundaries with Children, and her continued reports to the police and DCS, were damaging to Children's physical health and impaired their emotional development. *Id.*

[19] Four days after the end of Mother's summer parenting time with Children, she filed her Petition for Custody Modification, citing in support thereof that: (1)

Mother sees a clinical psychologist on a regular basis; (2) she completed family therapy with Children and therapist Wild in May 2016; (3) Parents agreed in May 2016, with the approval of therapist Wild, that Mother would have two months of unsupervised parenting time with Children at Mother's California home; (4) during the summer parenting time, Mother expressed to Father concerns for Children's health and took Children for various medical check-ups; and (5) it is in the best interests of Children for them to spend more time with her, that such time be unsupervised, and that the trial court evaluate Parents' custodial arrangement to determine if modification is in Children's best interests. *Appellant's App. at Vol. 2* at 92 (emphasis added). A hearing on the Petition for Custody Modification was held in July 2017, during which, the trial court, without Mother's objection, admitted into evidence the 132-page GAL Report. Also during that hearing, Mother testified that she planned to live in California, where her husband is stationed, for at least six years. Mother further admitted that she and Father do not have "good communication." *Tr. Vol. 2* at 87, 91.

[20] The trial court entered its written findings of fact and conclusions thereon pursuant to Mother's written request under Trial Rule 52(A). Indiana Trial Rule 52(A) provides that a court on appeal "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Indiana law requires a determination on "whether the evidence supports the findings and whether the findings support the judgment." *Pitcavage v. Pitcavage*, 11

N.E.3d 547, 552 (Ind. Ct. App. 2014). The trial court's findings and conclusions will be found clearly erroneous "if they are unsupported by the facts and inferences contained in the record." *Id*. at 553. "We will find the judgment to be clearly erroneous if, after reviewing the record, we are left with a firm conviction that there has been a mistake." *Id*.

[21] Citing to findings 29 through 43 in the instant Order, Mother argues that the trial court "issued findings that merely identify what Father (and in some cases Mother) testified to or contended." *Appellant's Br.* at 20. Mother asserts that the trial court neither referred to corroborating evidence, *see e.g., Bowyer v. Ind. Dep't of Nat. Res.*, 944 N.E.2d 972, 984 (Ind. Ct. App. 2011), nor indicated how the recounting of Father's testimony led it to specific findings. *Pitcavage*, 11 N.E.3d at 533. Our court has said, "Findings of fact are a mechanism by which a trial court completes its function of weighing the evidence and judging witnesses' credibility," and a trial court "does not find something to be a fact by merely reciting that a witness testified to X, Y, or Z." *Id*. Instead, "the trier of fact must find that what the witness testified to is the fact." *Id*. Thus, "where a trial court's findings are merely recitations of a witness's testimony, they cannot be construed as 'true factual determinations.'" *Id*. (citing *Garriott v. Peters*, 878 N.E.2d 431, 438 (Ind. Ct. App. 2007), *trans. denied*). We treat the trial court's inclusion of these findings as "mere surplusage" rather than harmful error. *Id*. Here, we need not address whether the challenged findings are valid because, even if we treat some as surplusage, Mother's testimony, her admissions in the GAL Report, and the remaining findings support the trial court's determination

that Father should retain sole legal and primary physical custody of Children, and that Mother's parenting time should continue as supervised.

[22] Regarding custody, this court recently held:

> [W]hether the parents are willing and able to cooperate in advancing the child's welfare, is of particular importance in making legal custody determinations. . . . Where the parties have made child-rearing a battleground, then joint custody is not appropriate. Indeed, to award joint legal custody to individually capable parents who cannot work together is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to competing parents.

*Milcherska v. Hoerstman*, 56 N.E.3d 634, 641-42 (Ind. Ct. App. 2016) (internal citations, quotation marks, and parentheticals omitted). Here, Mother does not dispute the trial court's finding that she and Father do not have "good communication." *Tr. Vol. 2* at 87. In denying Mother's Petition for Custody Modification, the trial court concluded that "a change of custody [was] not in the best interest of the children at this time." *Appellant's App. Vol. 2* at 59. The evidence before us does not point unerringly to a conclusion different from that. The trial court did not err when it denied Mother's request to modify legal custody.

[23] Mother's claim that the trial court erred when it did not grant her unsupervised parenting time likewise fails. Mother and Children took part in therapy with therapist Wild for about three months in the spring of 2016. Thereafter, Parents and therapist Wild agreed, with the consent of the trial court, that Mother could

have two months of unsupervised parenting time in California during the summer of 2016. This agreed entry, however, did not change the underlying status that parenting time would be supervised upon Children's return to Indiana. Mother had the burden to prove that parenting time should no longer be supervised.

[24] In the spring of 2017, to gather information for the GAL Report, the GAL reviewed various videos of telephone conversations between Mother and Children, some of which she described in the GAL Report as follows. In an April 2017 call, Mother asked K.M. if she missed Mother anymore and asked if K.M. was saying that Mother was not her mom anymore. *Appellee's Conf. App.* at 91-92. K.M. began to cry and, twice, said she was sorry. *Id*. at 92. Mother told K.M., "[Y]ou don't have to fake cry, okay." *Id*. at 92. K.M. told Mother she was not fake crying, said she did not want to speak with Mother anymore, and hung up the phone. *Id*. In a call to R.M. that same day, R.M. asked Mother why she made K.M. cry. *Id.* Mother told R.M. that she didn't make K.M. do anything, "I asked her a question and she decided to act the way she did." *Id*. Mother told R.M. she heard that Children are saying Mother is not their mom, which hurts Mother's feelings. *Id.* R.M. explained that Father's fiancée could be their mom too, saying, "[Y]ou don't have to be our only mom." *Id.* Mother responded, "[S]he's a live-in girlfriend, and she has no legal rights to you." *Id*.

[25] The GAL Report also reflected statements made by Mother directly to the GAL—statements made through written and verbal communication. Mother,

describing a 2017 telephone conversation she had with K.M., admitted to calling K.M. "disrespectful" and "accusatory" when K.M. raised a topic that Mother did not want to discuss. *Id*. at 39. Mother confirmed with the GAL that she was being treated for Post-Traumatic Stress Disorder, yet believed that she had never been diagnosed with a mental health condition. *Id*. at 40. Mother also said that she had taken the Minnesota Multiphase Personality Inventory, and there were no findings. *Id*. The GAL requested a copy of that test, but through Mother's counsel, the GAL was told that the evaluation was completed as part of a psychological evaluation to see if she could participate in a "TV show," and the test could not be released because one of the television networks owned the rights. *Id*.

[26] Although Mother filed a motion to exclude part of the GAL Report as being inaccurate, she made no such request about the rest of the GAL Report. Mother cannot contest findings that are based on her own words. Based on this evidence, the findings were supported by properly admitted evidence. Here, the trial court did not err in finding in favor of the continuation of supervised parenting time.

## II. Parenting Time and Educational Records

[27] Mother next argues that the trial court erred "[b]y failing to identify the basis of its conclusion or meet the statutory basis for restricting Mother's parenting time." *Appellant's App*. at 26. "'Indiana has long recognized that the rights of parents to visit their children is a precious privilege that should be enjoyed by

noncustodial parents.'" *Patton v. Patton*, 48 N.E.3d 17, 21 (Ind. Ct. App. 2015) (quoting *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), *trans. denied*). "A parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent *might endanger the child's physical health or significantly impair the child's emotional development*." Ind. Code § 31-17-4-1 (emphasis added). Indiana Code section 31-17-4-2 provides:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Despite the statute's use of the word "might," for over twenty-five years Indiana Courts have interpreted the statute to require evidence that parenting time "would," not "might," endanger or impair the physical or mental health of the child. *Patton*, 48 N.E.3d at 21 (citing *Perkinson v. Perkinson*, 989 N.E.2d 758, 763 (Ind. 2013)).

[28]     Here, the March 2015 Order provided:

> 9. Mother's actions[,] in leaving the State of Indiana without filing a Notice of Intent to Relocate in May 2014, and failure to provide any notification to Father as to where the Children were[,] *endangers the Children's physical health and impairs their emotional development*. The Court also believes Mother continues to be a flight risk because she testified at the March 10, 2015, hearing that she was moving to California on March 21, 2015,

without any notification to the Court or to Father in advance of the March 10, 2015 hearing. Furthermore, Mother's disparagement of Father, inability to display appropriate boundaries with the Children, continued reports to the police and DCS are *damaging to the Children's physical health and impairs their emotional development*.

10. The Court finds that supervised parenting time for Mother is in the Children's best interest until such time as she completes psychotherapy with a licensed professional recommended by Dr. Mac Greene.

*Appellant's App. Vol. 2* at 79. Based on the finding of endangerment, the trial court ordered that Mother have "supervised parenting time with the Children at the Family Access Center in Noblesville, Indiana." *Id*. at 82. The trial court further ordered that "Mother shall arrange the times for supervised parenting time directly with the Family Access Center when she returns to Indiana for visits on at least seven (7) days' notice to Father; Mother may enjoy *up to four (4) hours of parenting time with the Children*. *Id*. (emphasis added)

[29] In the summer of 2016, by agreement of Parents and approval of therapist Wild, Mother enjoyed two months of unsupervised parenting time. At the end of the parenting time, Mother returned Children to Father safely and promptly. Four days later, Mother filed a Petition for Custody Modification, requesting a modification of custody and parenting time. Here, evidence was before the trial court through the GAL Report and the testimony of various witnesses, and, in the instant Order, the trial court held:

12. That *prior* to the commencement of Mother's therapeutic parenting time, Mother shall participate in treatment with Ms. Wild and the children in a manner and for a duration that Ms. Wild recommends. *Once Ms. Wild recommends that Mother and the children are ready for parenting time then parenting time shall proceed* in that Mother shall have therapeutic supervised parenting time through Meridian Psychological Associates with Janine Miller, Psy.D. or another doctoral level therapist with experience in therapeutic supervised parenting time. Said supervised parenting time shall occur in Indiana and shall be no more than *4 hours per month* unless determined by Dr. Miller or other doctoral level therapist that such frequency or duration should be increased or decreased.

*Appellant's App. Vol. 2* at 60-61 (emphasis added). Mother claims the trial court erred, first, by improperly suspending all of her parenting time (until therapist Wild determined that parenting time should proceed) without making a concurrent finding that her parenting time would "endanger the [C]hild[dren]'s physical health or significantly impair [their] emotional development," and second, by restricting her parenting time, once commenced, to four hours per month. *Appellant's Br*. at 23, 26.

[30]     Father argues that a finding of endangerment is inapplicable here because that language applies only where "*no* parenting time was granted to the noncustodial parent," not where, as here, "parenting time was ordered to be supervised and within certain parameters designed to protect the best interests of" the child. *Appellee's Br.* at 23 (quoting *J.M. v. N.M*, 844 N.E.2d 590, 599-600 (Ind. Ct. App. 2006) (emphasis original), *trans. denied*). Assuming without deciding that Father is correct, we agree with Mother that the trial court suspended all of

Mother's parenting time, including supervised parenting time, until such time as therapist Wild recommended that Mother and the Children were ready for parenting time. *Appellant's Br.* at 25. The trial court's suspension of Mother's parenting time is open-ended. Nothing precludes Mother from requesting that the trial court require therapist Wild to provide progress reports to the court or otherwise keep the court informed as to when therapeutic parenting time may begin.

[31] The determination of whether Mother's parenting time posed a danger to Children's physical or mental health is a question of fact that requires the trial court to weigh the evidence and judge witness credibility. Here, we cannot say that the GAL Report and the testimony of witnesses at the modification hearing provided insufficient evidence to make such a finding; we can only say that those explicit findings were not made. Accordingly, we remand to the trial court the question of whether parenting time with Mother would endanger Children's physical health or significantly impair their emotional development.

[32] In addition to restricting Mother's parenting time, the trial court ordered *"[t]hat Mother shall cease all contact and be denied contact with the [C]hildren's school,* extracurricular activities, clubs, doctors, therapists, and other activities that the [C]hildren participate in until therapeutic therapy as previously outlined is completed and either Ms. Wild or Dr. Janine Miller recommends such contact." *Appellant's App. Vol. 2* at 62. Mother interprets the italicized language to mean that the trial court has restricted her from having access to Children's

"educational records," and she argues that the evidence before the trial court does not support that conclusion. *Appellant's Br*. at 30.

[33] Here, the language used by the trial court—Mother is "denied contact with the [C]hildren's school"—does not specifically state that Mother is denied access to the educational records, but such a conclusion is implicit in the trial court's order *"[t]hat Mother shall cease all contact and be denied contact with the [C]hildren's school."*

[34] The Indiana General Assembly has shown a preference for each parent having access to a child's educational records. Indiana Code section 20-33-7-2 provides:

> (a) Except as provided in subsection (b), a nonpublic or public school must allow a custodial parent and a noncustodial parent of a child the same access to their child's education records.
>
> (b) A nonpublic or public school may not allow a noncustodial parent access to the child's education records if:
>
> (1) a court has issued an order that limits the noncustodial parent's access to the child's education records; and
>
> (2) the school has received a copy of the court order or has actual knowledge of the court order.

Nothing in the trial court's order precludes Mother from asking the trial court to provide alternative access to the Children's educational records.

# III.  Modification of Child Support

Finally, Mother argues that the trial court abused its discretion when it modified her weekly child support payments from $76.47, as of March 2015, to $133.00, beginning August 25, 2017.  *Appellant's Br*. at 30-31; *Appellant's App. Vol. 2* at 63, 86.  We begin by noting that Father did not respond to that argument in his brief.  Father's failure to respond to an issue raised in Mother's brief is "akin to failing to file a brief as to that issue."  *Gwinn v. Harry J. Kloeppel & Assocs., Inc.*, 9 N.E.3d 687, 690 (Ind. Ct. App. 2014).  "'Although this failure does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required, counsel for appellee remains responsible for controverting arguments raised by the appellant.'"  *Id.* (quoting *Nance v. Miami Sand & Gravel, LLC*, 825 N.E.2d 826, 837 (Ind. Ct. App. 2005), *trans. denied*).  "To obtain reversal, the appellant need only establish that the trial court committed prima facie error."  *Id.*  Prima facie error in this context means "'at first sight, on first appearance, or on the face [of] it.'"  *Id.* (quoting *Ponziano Constr. Servs. Inc. v. Quadri Enters., LLC*, 980 N.E.2d 867, 875 (Ind. Ct. App. 2012)).

"'Decisions regarding child support rest within the sound discretion of the trial court.'"  *Taylor v. Taylor*, 42 N.E.3d 981, 986 (Ind. Ct. App. 2015) (quoting *Haley v. Haley*, 771 N.E.2d 743, 752 (Ind. Ct. App. 2002)), *trans. denied*.  "Thus, we reverse child support determinations only if the trial court abused its discretion or made a determination that is contrary to law."  *Id.*  "'An abuse of discretion occurs when the decision is clearly against the logic and effect of the

facts and circumstances before the court, including any reasonable inferences therefrom.'" *Holtzleiter v. Holtzleiter*, 944 N.E.2d 502, 505 (Ind. Ct. App. 2011) (quoting *In re Paternity of E.M.P.*, 722 N.E.2d 349, 351 (Ind. Ct. App. 2000)).

[37] Modification of child support may be made only under certain conditions. Indiana Code section 31-16-8-1 in pertinent part provides:

> (b) Except as provided in section 2 of this chapter, modification may be made only:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

> (2) upon a showing that:

> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind. Code § 31-16-8-1. Our court has said, "[W]hen a change in the parent's income would modify the child-support order by less than 20%, that change, by itself, is not enough to meet the statutory burden of subsection (b)(1), but '[t]here may be situations where a variety of factors converge to make such a modification permissible under the terms of the statute.'" *Maple v. Maple*, 71 N.E.3d 75, 80 (Ind. Ct. App. 2017) (quoting *MacLafferty v. MacLafferty*, 829

N.E.2d 938, 942 (Ind. 2005)). "In other words, in order to satisfy subsection (b)(1) a parent must prove that one or more factors, in addition to any change in income, have 'converged' to create a change in circumstances so substantial and continuing as to make the prior order unreasonable." *Id*. While possible, "it will be uncommon for multiple factors to 'converge' to create a change in circumstances so substantial and continuing as to make the prior order unreasonable." *Id*.

[38] This case is not one of those instances. Here, we find no evidence in the record before us to establish that one of the Parents was paying child support in an amount that was more than twenty percent of the child support guideline as required by Indiana Code section 31-16-8-1(b)(2)(A). Furthermore, because sole legal custody and primary physical custody remained with Father, there was no evidence of "changed circumstances so substantial and continuing as to make the terms [of child support] unreasonable." I.C. § 31-16-8-1(b)(1).

[39] Moreover, the evidence before the trial court did not support the trial court's: (1) finding 45, which stated, "Father makes $64,500 annually [and] . . . . receives a vehicle allowance of $3,600 annually"; and (2) conclusion 19 that was based on finding 45 and stated in pertinent part, "That Mother shall pay child support to Father in the amount of $133 weekly[,] . . . [which] shall commence on August 25, 2017." *Appellant's App. Vol. 2* at 57. During the custody hearing, Father testified that he earned $55,000 per year and received a fringe benefit of a $3,000 car allowance. *Tr. Vol. 2* at 121. In the GAL Report, which was filed with the trial court on June 1, 2017, the GAL noted, "[Father]

is currently employed . . . earning $55,000.00 working 40 hours per week."
*Appellee's App. Vol. II* at 42. The trial court's modification of child support, requiring Mother to pay Father $133 per week, was based on a Child Support Obligation Worksheet that neither party signed. *Appellant's App*. at 63. We find no evidence to support the finding that Father made $64,500 per year or a conclusion that Mother should pay Father child support in the amount of $133 per week. The trial court's determination to the contrary is clearly against the logic and effect of the facts and circumstances before it. Accordingly, we reverse the trial court's determination to modify Mother's child support obligation and remand for the trial court to reinstate the child support order that was in place prior to the instant modification.

[40] Affirmed in part, reversed in part, and remanded with instructions.

Bailey J., and Pyle, J., concur.